ROBIN STULLIVAN v. THE STATE.

No. 3113.   Decided February 22, 1905.

**Murder—Reasonable Doubt—Harmless Error.**

Where defendant plead guilty, his confession being supported by the evidence of the State, the court charging on the different degrees of murder and also submitting the improbable theory of the defendant that he committed the homicide while asleep, there was no error in not charging the jury on the reasonable doubt in this connection, because if there was error it was favorable to defendant in authorizing the jury to acquit on this theory of the defense.

Appeal from the District Court of Montgomery. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

No brief for appellant has reached the hands of the reporter.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the first degree, under a plea of guilty, and his punishment assessed at death. The record discloses that the requirements of article 554, Code Criminal Procedure, were followed, and it is made to appear that appellant was sane and uninfluenced by any consideration of fear, persuasion or delusive hope of pardon prompting him to enter his plea of guilty. A jury was empaneled, and evidence introduced as required by article 555. The court submitted only murder in the first degree. The statement of facts discloses that while deceased (appellant's father) was lying asleep in his bed, appellant shot him with a winchester rifle. The bullet entered just under the eye, and lodged in the back of his head. At his examining trial appellant, after being properly warned, made a confession in writing, in which he admitted the killing of his father, about 10 o'clock on the night of July 24th. In that confession he states his father had previously threatened to kill him and that was the basis of his action: He says he had determined to kill his father; that after his father went to sleep, he went into the adjoining room and to bed with William Spillman. About a half-hour later he got up, went into the adjoining room, where his father was asleep, got a winchester rifle off the shelf near his father's head, went around to the foot of the bed and shot him to death. The above is the testimony of the examining magistrate. The sheriff testified that while appellant was in his custody, he warned him, and after such warning appellant made a statement to him. The substance of it is this: appellant borrowed 25 cents from Mrs. Roberts; and bought 15 cents' worth of whisky of Jennings on the Saturday before the killing on Sunday night, and tried to get strychnine from Dr. Cooper to put in the whisky, for the purpose of poisoning his father. He failed to secure the strychnine. He further stated, that on the night of the killing, after his father went to bed, he (appellant) got up, secured his father's gun, went to the foot of the bed and shot him while he was asleep. He then went over and told his Uncle Isom that some one had murdered his father. Dr. Cooper states appellant came to him on Saturday before the killing to buy a dime's worth of strychnine to kill cats and coons. The Doctor concluded not to let him have the strychnine and returned appellant his money. He did not state to Cooper that he desired to kill his father. Mrs. Roberts stated appellant borrowed the quarter of a dollar from her, but made no statement as to what he wanted with it. Jennings testified that he sold appellant 15 cents' worth of whisky on Saturday before the killing. Spillman, who occupied the same bed with appellant the night of the shooting, testified that he had heard defendant say he was going to get the quarter of a dollar from Widow Roberts, and get 15 cents' worth

of whisky and some poison from Dr. Cooper and put it in the whisky, and if that did not fix him he would fix him another way. Appellant did not mention his father's name. This witness was sleeping with appellant on the night of the homicide, but did not hear the firing of the gun. In addition to the plea of guilty, this is the State's case.

Appellant testified that on Sunday evening before the killing he was carrying a bundle to his uncle's. His father called him back, appellant failed to return, and his father got mad and "said he would have me in my grave by to-morrow morning. I was afraid of him. I went to bed that night, and got to dreaming and dreamed that my father was trying to kill me. Knowing where the gun was I got the gun while asleep and shot him, and when the gun fired it waked me. A light was burning in my father's room. The ball hit under the eye, he was lying with his head on his left hand. I did not want to kill him. He was cruel to me and beat me over the head with a piece of iron and knocked me down and killed me for awhile, and often beat me over the head with cudgels." On cross-examination, he says: "Yes, sir; the lamp was burning in my father's room when I shot him. I got the gun off the shelf near my father's head and went round to the foot of the bed and my father seemed like he was about half awake when I shot him, lying with his head propped under his left hand. I went over and told my uncle, Isom Stullivan, that some one had murdered my father. I did not tell him that I had killed him." The general reputation of the deceased was shown by appellant, to the effect that he was cruel to his family. The State, in rebuttal, showed that deceased was very kind to his son. Richardson and Battle testified to their knowledge of the relations between the father and son, that the father was kind to the son, and they knew of no trouble existing.

The court submitted murder in the first degree; and further authorized them to acquit, under appellant's testimony. The only question raised for our consideration is the failure of the court to charge reasonable doubt as to the defendant's guilt. We are of opinion that this was not error. If there was any error in the court's charge, under the conditions of this record, it was in authorizing the jury to acquit appellant on his statement. It is more than remarkable that a party who was sound asleep under the impulse of a dream and while asleep would secure a gun, and with such accuracy detail the statements of all that occurred while he was asleep in regard to all his movements and the facts attending these movements, including the homicide, the position of the deceased, and other matters about which he testified. We do not believe the charge given was called for. It would not have been error to omit a charge on appellant's testimony. It is a familiar rule that where the evidence is very weak, trivial, light or improbable in its nature or character, or that the application is remote, it is not necessary that the court should charge upon it. If the issue is presented by the evidence, which is pertinent and sufficiently strong as to reasonably suppose that the jury could be influenced by it in arriving at a verdict, the court should charge the law

so as to furnish the jury with an appropriate rule of law upon the subject. It is not required to charge upon the testimony which is unreasonable. Now, the question here is, has the statement of appellant such pertinency and force as to render it reasonable to infer that the jury would have been influenced by it in arriving at their verdict if the reasonable doubt had been given in the charge. Was its omission under the peculiar circumstances, calculated in any way, under the facts detailed by appellant, to probably injure him? We think not. Speaking on this question in a case where the evidence was decidedly more probable than in this case, the court said: "On the other hand, we believe that notwithstanding there is evidence tending to present this defense, still its pertinency and force are so remote and weak that the failure to charge the law applicable to this defense worked no injury to the rights of the defendant." (Elam v. State, 16 Texas Crim. App., 34.) The difference between the case quoted and this is, that there is no exception in that case, and there is here, reserved in the motion for new trial. It will be noted in this respect that our Legislature saw proper to change the rule with reference to these matters as enunciated in article 723, Code Criminal Procedure. Under the decision which is now the law, construing that statute, it is held not only that exception must be reversed, but the error committed by the court in relation to charges must be of such a nature that it was calculated to injure the rights of the accused. Is it probable or even is it possible that any jury would have believed such statements as those detailed by appellant? There is nothing to indicate that he was a somnambulist, or that he was in the habit of walking about in his sleep and doing things as well asleep as awake, or any testimony of that character. He simply details all of his actions or his environments in the room, its condition, the location of the gun, the fact that the light was burning, that his father was asleep with his head resting upon his left hand, and apparently about half awake; that he went to the head of the bed; got the gun, came back to the foot, and while his father was lying in this position, shot him under the eye and killed him; all of which he swears occurred while he was asleep. If these facts are true, appellant is the most remarkable of witnesses. A dream to the effect that his father was killing him induced him to get out of his bed asleep, and go through all these actions detailed by him, is perhaps not the least remarkable part of his statement. The fact that he could tell exactly every thing he did while asleep is more remarkable. This story is more than improbable. However, it was submitted for the consideration of the jury, and their verdict is an indication of their utter unbelief of such an improbable story. So we believe the court was in error favorable to defendant in charging the jury to acquit if they believed such a story, and there was no error in failing to charge on reasonable doubt.

Nor do we believe it was necessary from another standpoint to have given this charge, or the charge on reasonable doubt. The reasonable doubt is never engendered, nor called for by the facts, when the presump-

tion of innocence does not obtain. It is but a corollary to and a part of the main proposition, which is, presumption of innocence. Presumption of innocence and reasonable doubt do not apply, except where there is an issue on the facts, and only as against criminative facts. In this case defendant had pleaded guilty to murder. He had made more than one confession in regard to the killing. Under this state of case it is very clear that the presumption of innocence does not obtain, and as a usual rule it does not obtain under a plea of guilty. It was said in Warren's case, 68 S. W. Rep., 275, "Was it necessary on this state of case for the court to give a charge on reasonable doubt as to the guilt of appellant of the offense of murder. Or could it assume as a fact the guilt of appellant predicated on his judicial admission that he was guilty of murder. As we understand, the doctrine of reasonable doubt applies alone to criminative facts. On the plea of guilty as presented to the jury there must be no criminative fact to be found by them: that is, they were authorized to find appellant guilty of murder on his plea alone. They were required to determine the degree of murder, and on the evidence adduced before them they were authorized to determine this issue. The question of reasonable doubt as to the guilt of murder not arising, the degree of murder being the only issue they were required to try. As has been shown, the jury were instructed on reasonable doubt as between the degrees, and the court moreover charged the jury that they must believe defendant guilty of murder upon express malice beyond a reasonable doubt before they could convict him of that offense. His innocence of the offense was not an issue. So that, in our opinion, it was not necessary for the court to instruct the jury that, if they had a reasonable doubt as to the guilt of defendant they must acquit." See also Martin v. State, 36 Texas Crim. Rep., 632; Crow v. State, 6 Texas, 334; Swan v. State, 47 S. W. Rep., 362. These cases are also authority for the proposition that the plea of guilty admits the facts charged in the indictment. Of course, under article 555, Code Criminal Procedure, it is necessary under an indictment charging an offense, where the punishment is not absolutely fixed by law, or where the jury have a discretion in assessing the punishment, evidence must be introduced. This is for the purpose of informing the jury of the real facts of the case, so that they may appropriately and intelligently assess a verdict in proportion to the offense committed. We are not discussing any other character of case, except the one in hand as made by the facts stated from the record. We do not believe the court erred in failing to charge on reasonable doubt and if there was error in the case it was favorable to defendant in authorizing the jury to acquit on his statement. The testimony of appellant is too improbable to have possibly affected the jury favorably to him. The judgment is affirmed.

*Affirmed.*