### John Wynne v. The State.

No. 116. Decided November 17, 1909.

Rehearing denied April 19, 1910.

**1.—Murder—Continuance—Want of Diligence.**

Where, upon trial of murder, the defendant in his second application for continue failed to allege that the application was not made for delay; and it further appeared that the absent testimony was of an impeaching character and probably untrue, there was no error in overruling the motion. Following Zumwalt v. State, 5 Texas Crim. App., 521, and other cases.

**2.—Same—Evidence—Res Gestae—Declarations of Deceased.**

Where, upon trial of murder, the State was permitted to introduce the declarations of the deceased and her son occurring shortly after the shooting of the deceased and at the scene of the killing, there was no error, as the testimony was res gestae. Following Rice v. State, 54 Texas Crim Rep., 149, and other cases.

**3.—Same—Evidence—Res Gestae—Declarations of Deceased.**

Upon trial for murder, there was no error in admitting in evidence the declarations of deceased, made shortly after the shooting, that when she went out on the gallery she saw the defendant come around the house; besides there was no objection to this testimony.

**4.—Same—Charge of Court—Invited Error.**

Where, upon trial of murder, the charge complained of was invited by the defendant, he could not complain thereof; besides the charge was unobjectionable.

**5.—Same—Charge of Court—Circumstantial Evidence—Alibi.**

Where, upon trial of murder, the court properly charged on the issues of circumstantial evidence and alibi, there was no error.

**6.—Same—Charge of Court—Murder in the Second Degree.**

Where, upon trial of murder, the evidence showed an assassination, and

excluded the issue of murder in the second degree, there was no error in the court's failure to charge thereon. Following Henry v. State, 30 S. W. Rep., 802, and other cases.

**7.—Same—Sufficiency of the Evidence—Death Penalty.**
    Where, upon trial of murder, the evidence conclusively established murder in the first degree, a conviction assessing the death penalty will not be disturbed.

Appeal from the District Court of Walker. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*W. Q. B. Gillaspie,* for appellant.—On question of admitting declarations of deceased and her son: Holt v. State, 9 Texas Crim. App., 571; Felder v. State, 23 Texas Crim. App., 477; Ex parte Kennedy, 57 S. W. Rep., 648.

On question of the court's failure to charge on murder in the second degree: Oates v. State, 51 Texas Crim. Rep., 449, 103 S. W. Rep., 859.

*F. J. McCord,* Assistant Attorney-General, and *Gordon Boone* and *Dean, Humphrey & Powell,* for appellant.—On question of declarations of deceased and her son: Harrison v. State, 20 Texas Crim. App., 387; Cook v. State, 22 Texas Crim. App., 511; Kenney v. State, 79 S. W. Rep., 817; Wilson v. State, 49 Texas Crim. Rep., 50, 90 S. W. Rep., 312; Sims v. State, 36 Texas Crim. Rep., 154, 36 S. W. Rep., 256; Connell v. State, 46 Texas Crim. Rep., 259, 81 S. W. Rep., 746; Rice v. State, 49 Texas Crim. Rep., 569, 94 S. W. Rep., 1024, and cases cited in opinion.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree and given the death penalty.

1. Appellant filed a motion for continuance for the want of the testimony of Lem Smiler, who was alleged to reside in Galveston County. If diligence be conceded, the application for continuance is fatally defective in that it did not contain, at the time it was presented to the trial court, the statutory requisite, to wit: that the application was not made for delay. Furthermore, the evidence would be of an impeaching character, and, therefore, same would not authorize a continuance. Furthermore, we do not believe the testimony would have been material or probably true in the light of this record. See Zumwalt v. State, 5 Texas Crim. App., 521, and White v. State, 9 Texas Crim. App., 41.

2. Appellant insists the court erred in permitting Sallie Wynne, Buster Wynne and Eddie Wynne to testify to facts stated in bills of exceptions Nos. 2, 3, and 4. Each of said witnesses, as disclosed by

said bills, was permitted to testify, in substance, as follows: That their mother made a statement that she fell down on the ground out doors, and exclaimed: "Oh Lord, have mercy, John, you have killed me." Sallie Wynne was asked if Buster Wynne said anything. She replied, "Buster said, Oh Lord, have mercy, papa, you have killed mama," which testimony was objected to by appellant on the ground that it was not res gestae. The bill is approved with this explanation: "That the witness Sallie Wynne was sleeping in a room adjoining and opening into her mother's room; the shot awoke her; she immediately got out of bed and went through her mother's room to the gallery, and there saw her mother and heard her and Buster Wynne make the statements complained of. I understand the objections to have been made as stated except the one that the deceased afterwards made contradictory statements as to the killing, but allowed the testimony because it was immediately after the shooting and was clearly res gestae." As explanatory of the above bill, it may be stated that appellant was charged with killing his wife. The State's evidence suggested that he crept into a window, returning home at night from the town of Huntsville about nine o'clock, secured a gun from under the bed of his son Buster, and fired its contents into the body of his wife, who was sleeping with an infant child. That the wife immediately awoke, making the statement above detailed, after running a few feet out on the gallery, where she fell. Appellant was present and heard all the statements. This testimony was clearly res gestae, as indicated by a long line of authorities, some of which we copy from the State's brief, as follows: Rice v. State, 54 Texas Crim. Rep., 149, 112 S. W. Rep., 299; Holden v. State, 18 Texas Crim. App., 91; Browning v. State, 26 Texas Crim. App., 432; Clement v. State, 22 Texas Crim. App., 23; Jennings v. State, 42 Texas Crim. Rep., 78; Tooney v. State, 8 Texas Crim. App., 452; Lewis v. State, 29 Texas Crim. App., 201.

3. Appellant also objected to the court permitting Gus Hall to testify that deceased told him, immediately or soon after the shooting, that when she went out on the gallery she saw the defendant come from around the west side of the house. The bill certifies that this is part of the declaration of deceased, and furthermore, that counsel for appellant did not object to same. Either fact would dispose of appellant's objection.

4. Appellant insists the court erred in giving paragraph 13 in his charge to the jury, which paragraph is as follows: "If you do not find from the evidence beyond a reasonable doubt that the defendant and not Buster Wynne killed the deceased you should acquit him." This paragraph, the court says in the bill, was inserted in same after the main charge was completed at the request and instance of appellant. Being, therefore, if error, invited error, which rule this court as well as the Supreme Court of this State recognizes, appellant could not complain of same, but aside from this, we see no legal objection

to the charge. The court properly charged on circumstantial evidence, and every other phase of the law applicable to this case. In addition to other things, the court charged on the issue of alibi.

The evidence in this case, in substance, is as follows: Appellant and his wife, two daughters and a son were living some four or five miles from the town of Huntsville. The homicide occurred on Monday night. On Wednesday before when the family attempted to eat their usual meal they discovered that the syrup was very bitter, and that they could not eat it. On Thursday appellant went hunting, killed some squirrels, and returned and cleaned them. It was unusual for him to clean game. Appellant cut the game up and his wife cooked the same for breakfast, but the meat was so bitter they could not eat same. Appellant was not at the breakfast table that morning. On the night of the homicide Buster Wynne, appellant's son, a boy about 19 years of age, was sleeping with his brother, Eddie Wynne, in a room immediately back of the room usually occupied by his mother and father, and on the night in question occupied by his mother and her infant child. Adjoining the mother's room on the east was the room in which the two daughters slept. All the doors of the home were securely fastened, as testified to by the witnesses when they retired for the night, on the night of the homicide. Somewhere near nine o'clock, as stated, someone entered the front room occupied by the mother and shot her. She awoke, jumped out of bed, and ran out on the front gallery, and finally off of the gallery on to the ground, and fell, exclaiming, "Oh Lord, have mercy, John, you have killed me." All of the children were aroused and went out to where the mother was, and Buster Wynne said, in the presence of his father, "Oh Lord, have mercy, papa, you have killed mama." Buster Wynne further stated that he had loaded his gun carefully the night before and put it under his bed. That the shot awakened him and he jumped up and ran out on the gallery, where the above statement was made. That he tried to secure his gun, but his gun being gone from under the bed, he secured his father's gun, which was standing at the door between his room and his mother's. That he tried to kill his father with the gun he had; that his father grabbed it and took it away from him. Thereupon his father told him to go over to a neighbor's and carry the gun that had evidently been used in the homicide, which was the witness' gun, and shoot the other barrel of same off, and if he did not do so he would kill him. He also told his son to tell parties that a man named Bay had killed his mother. The witness further testified that after he returned, his father sent him over to another neighbor's after some laudanum. The neighbor returned with the laudanum and handed it to the father, and the father requested the neighbor to go on into the house with the laudanum, that he wanted to talk to Buster, his son. Buster Wynne, appellant's son, testified, in substance, that appellant there told him if he communi-

cated the fact that he, appellant, killed his mother that he would kill him and the whole crowd. Deceased, after being duly warned that she could not live but a short while, was requested to make a statement. She said she was asleep and that the burning incident to the shooting at such close proximity had awakened her, and that she could not swear who did it; that she did not want to do an injustice, but disclosed the fact that appellant came to her immediately upon her getting out on the gallery, and she never denied that the statements above made by her were made. The motive for the killing was the fact that appellant had become very much angered at his wife because she constantly protested against his mortgaging a drove of cattle that the wife owned to divers and sundry parties, thereby depriving the mother of means that she wished to send to her daughter, who was attending Prairie View normal school. The evidence further shows that prior to the time of the homicide appellant was prosecuted in the Justice Court several years before for striking his wife. She was quite bloody from said blow, and appellant had to pay a fine for it. No motive is shown on the part of Buster Wynne, appellant's son, for the killing, but personal love and friendship between him and his mother seems to be conclusively established by the evidence. The indifference of appellant over the whole transaction, his disinclination even to assist his wife back into the house, as testified to by one of the daughters, and his effort to manufacture testimony in his behalf, and all the facts above detailed, together with others that are not here stated, show conclusively that appellant and no one else committed this horrible assassination. Being an assassination, it could not suggest murder in the second degree. Many authorities of this court hold that where the issue is not in the case murder in the second degree should not be given any more than any other issue. Henry v. State, 30 S. W. Rep., 802; Ringo v. State, 26 S. W. Rep., 73; Davis v. State, 28 Texas Crim. App., 542, 13 S. W. Rep., 994; Chapman v. State, 34 Texas Crim. Rep., 27, 28 S. W. Rep., 811; White v. State, 30 Texas Crim. App., 652, 18 S. W. Rep., 462; Stullivan v. State, 47 Texas Crim. Rep., 615, 85 S. W. Rep., 810; Elsworth v. State, 52 Texas Crim. Rep., 1, 111 S. W. Rep., 963.

We have carefully reviewed all of appellant's assignment of errors, and must say that the evidence conclusively establishes appellant's guilt. The charge of the court is correct, and the evidence amply warrants the death penalty.

The judgment is affirmed.

*Affirmed.*

McCord, Judge, not sitting.
[Rehearing denied April 19, 1910.—Reporter.]