Frank Taylór v. The State.

No. 6006.   Decided March 2, 1921.

Rehearing Denied April 13, 1921.

1.—Murder Continuance—Want of Diligence—Fugitives.

Where upon trial of murder, defendant's application for continuance showed a want of diligence as to witnesses. and besides showed that they were fugitives from the county, the presumption is that the court in overruling the motion, was correct.

2.—Same—Evidence—Res Gestae—Declaration of Third Party.

Where upon trial of murder, it appeared that *immediately after the* shooting defendant came out of the barn where the shooting had taken place and the wife of the deceased said to him then: "Oh, Mr. Taylor, you have killed my darling and have left me all alone with nothing but three little orphan children.  You have killed the best friend on earth you had.  Why did you do it?" To which defendant replied, "Go and see about him," there was no error in admitting this testimony as *res gestae.* Following Moore v. State, 15 Texas Crim. App., 18, and other cases.

3.—Same—Right of Being Armed—Evidence—Bill of Exceptions.

Where defendant asked the court to charge the jury that the defendant had the right to carry the pistol from Tyler to his farm on the occasion of the homicide, and the fact that he had a pistol on said occasion could not be considered by them as a circumstance against him, there was no error in refusing said requested charge; the bill of exceptions being entirely destitute of any showing as to why the refusal of such charge was error.

4.—Same—Charge of Court—Requested Charge—Self-defense.

Where defendant excepted to a certain paragraph of the court's charge as being too general, he should have submitted a special instruction in its place, nor was there error in the court's refusal of a requested charge on self-defense, as it was covered by the main charge.

5.—Same—Self-defense—Two Shots—Charge of Court.

Where it appeared that two shots were fired at the deceased by the defendant within about two seconds, there was no error in not attempting to charge the jury on the different legal aspects of self-defense as to said two shots, in submitting defendant's right of self-defense.

6.—Same—Argument of Counsel—Practice in Trial Court.

Where a contention arose between counsel for the State and defendant, as to whether or not defendant could have averted the necessity for taking the life of deceased, by merely presenting his pistol, etc., and defendant thereupon asked of the court two requested charges which in effect seemed to reiterate propositions of law already embraced in the court's main charge, there was no error in refusing them.

7.—Same—Statutes Construed—Additional Charges—Practice in Trial Court.

It is not the purpose of Article 837, A, C. C. P., to require of the court additional charges after or during the argument for the purpose of setting differences of construction of the language or effect of the charge made by opposing counsel.

8.—Same—Argument of Counsel—Evidence—Practice on Appeal.

Where a number of objections to questions asked by the State counsel and also to arguments made by the prosecution showed no error, there was no reversible error.

9.—Same—Misconduct of Jury—Remark by Juror.

Where only one juror testified, on the hearing of the motion for a new trial, as to someone making the remark to the effect that if a man was convicted of manslaughter he could not be thereafter convicted of murder, and that this was incidental and had no weight with the juror, there was no reversible error.

10.—Same—Newly Discovered Evidence—Want of Diligence—Practice on Appeal.

Where, the alleged newly discovered evidence could have been obtained during the trial, and in other parts was cumulative, there was no error in overruling the motion for new trial on that ground.

11.—Same—Rehearing—Res Gestae—Declarations of Third Parties.

Where the wife of the deceased, in the statement objected to, charged the defendant with killing her husband, speaking of him in said statement as "my darling," and as being the "friend" of the accused, and each statement was an accusation which called for a reply from the ·defendant, which he did not make, and there was nothing of such inflammatory character in the language used in that connection as called for a reversal at the hands of this court, there was no reversible error. Following Castillo v. State, 31 Texas Crim. Rep., 151.

12.—Same—Evidence—Statements By Wife of Deceased—Mental Condition of Witness.

As ascertaining the circumstances as well as the mental condition of the wife of deceased at the time she made such statements, it was not error to permit the State to ask defendant's witness, on cross-examination questions which sought wholly to bring out the fact that said wife was greatly agitated, etc.

13.—Same—Evidence—Cross Examination. Size of Deceased.

Referring to defendant's complaint that the State was permitted to ask a witness for the defense on cross-examination if it was not true that each member of the jury was not a larger man than deceased, there was no reversible error.

14.—Same—Argument of Counsel—Practice on Appeal.

Reverting to the complaint that in the argument of the State's counsel's remarks that defendant was going around and telling his various witnesses who were named in said argument what to swear, the same was a legitimate inference from the evidence, there was no reversible error.

15.—Same—Argument of Counsel—Practice on Appeal.

On trial of murder, there was no error in the argument of State's counsel in that he called the wife of deceased "a poor little poverty, grief-stricken widow, etc.," and also said that no verdict rendered could restore the deceased to life, or aid this widow and her three children, all of which was based on the testimony, there was no reversible error. Following Pierson v. State, 18 Texas Crim. App., 564.

16.—Same—Additional Charges—Statutes Construed—Argument of Counsel.

Under Article 737-A, Vernon's C. C. P., with reference to additional charges, unless the party seeking such charge at this stage of the trial, that is, after argument has begun, affirmatively shows a right thereto under one of the conditions named by the Statute, its refusal will not be held error; besides, the record does not show that the State's counsel indulged in improper argument.

17.—Same—Different Phases of Self-Defense—Charge of Court.

The record in the instant case does not raise the issue of different phases of the law of self-defense, based on the two shots fired by the defendant, as this constituted a continuous transaction.

18.—Same—Newly Discovered Testimony—Want of Diligence.

If defendant desired the testimony of the absent witness for whose newly discovered testimony he asked a new trial, he should have taken steps during the trial to procure the testimony of said witness, it having developed dur-

ing the trial that this witness was present at the conversation referred to, and in the absence of this showing there was no error in overruling the motion.

**19.—Same—Threats—Newly Discovered Evidence—Motion For New Trial.**

Where the threats alleged in the affidavit as being newly discovered evidence appear never to have been communicated to defendant, and besides would not likely have produced a different result, there was no error in overruling the motion for new trial on that ground.

Appeal from the District Court of Smith. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Simpson, Lasseter & Gentry,* for appellant.—On question of declarations of wife of deceased: Wilson v. State, 90 S. W. Rep., 312; Kemper v. State, 138 id., 1025; Sorrell v. State, 169 id., 299; and cases cited in opinion.

On question of argument of counsel: McIntosh v. State, 213 S. W. Rep., 659. Brookerson v. State, 225 id., 375; Canales v. State, 215 id., 964.

On question of newly discovered evidence: Spencer v. State, 153 S. W. Rep., 858; Riojas v. State, 36 id., 268.

*Roy Butler,* for the State.—On question of continuance: Deckard v. State, 124 S. W. Rep., 673; Weaver v. State, 34 Texas Crim. Rep., 282; Lane v. State, 129 S. W. Rep., 353; Fulkerson v. State, 121 id., 1111.

On question of misconduct of jury: Kelly v. State, 28 Texas Crim. App., 120.

On question of newly discovered evidence: Gordon v. State, 224 S. W. Rep., 894; Johns v. State, 140 S. W. Rep., 1093; English v. State, 224 id., 511; Mitchell v. State, 222 id., 983; Morris v. State, 224 id., 724.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Smith County of the murder of one Jim Norris, and his punishment fixed at twenty-five years in the penitentiary.

There was no error in overruling the application for continuance. The indictment was returned April 15th, and the arrest followed on April 19th, and no subpœna appears to have been issued until May 19th, and then for a party of different name from the absent witness mentioned in the application. When appellant discovered his mistake as to the name of this witness some time after the subpœna was issued, the alleged absent witness had gone away from the county. No excuse appears for such mistake. In addition to the lack of diligence,

the trial court heard evidence on the motion for a new trial, a contro-verting affidavit having been filed by the State setting up that said absent witness was a fugitive from the county. The evidence intro-duced upon the hearing of said motion is not set out, but in its absence the presumption would be that the trial court was satisfied of the facts set up, and we would have to uphold his ruling as correct.

It appears from the evidence in the case that the shooting of de-ceased occurred inside a barn on the premises occupied by him as a renter on the farm of appellant. Mrs. Norris, wife of deceased, testi-fied that she witnessed the homicide from a door in the barn. It also appears that immediately after the shooting appellant came out of the barn, and Mrs. Norris said to him: "Oh, Mr. Taylor, you have killed my darling and have left me all alone with nothing but three little orphan children. You have killed the best friend on earth you had. Why did you do it?" and that appellant whirled, threw up his hand with the pistol in it, and then dropped it and said: "Go and see about him." This statement and conversation was objected to for various reasons. It appears from the record that appellant sharply contested the presence of Mrs. Norris at a place where she could see the killing, it being contended that she was in her dwelling when the shooting took place. The conversation above set out was stated to have occurred im-mediately after the shooting, and was admissible as reflecting Mrs. Norris' knowledge that appellant had shot her husband. Her request of him to know why he did it, was admissible. The whole matter was so close to the actual time and place of the shooting as to make it *res gestae* of that transaction. Moore v. State, 15 Texas Crim. App., 18, and Felder v. State, 23 Texas Crim. App., 477, are the only authorities cited by appellant on this point. As we understand those cases, both are against appellant's contention. There was other evidence as to the fact of Mr. Norris' children.

The appellant asked the following special charge: "You are, at the request of the defendant, instructed that the defendant had the right to carry the pistol from Tyler to his farm on the occasion of the homi-cide and the fact that he had a pistol on said occasion cannot be con-sidered by you as a circumstance against him." The bill of exceptions is entirely destitute of any showing as to why the refusal of such charge was error. While one might have a right to carry a pistol from his home to another place, as to a farm for instance, if he intended to leave the pistol at said place; he would have no right to carry same from his home to his farm, or from farm to farm, and back and forth habitually or even occasionally for the mere purpose of having the pistol with him. Unless it affirmatively appear in the bill of excep-tions that such carrying was for a purpose or under circumstances permitted by law, our presumption would be in favor of the correct-ness of the ruling of the trial court in refusing said charge.

Appellant's exception to paragraph 12 of the court's charge was too general. If not satisfied with said charge in the matters complained

of, a special instruction should have been asked. The trial court told the jury in express terms that in determining if appellant acted in his necessary self-defense, they should view the transaction from his standpoint at the time, and there was no error in refusing special charge No. 7. We think the charge of the trial court on self-defense a clear presentation of the law applicable to the facts, in this case, and that same is not open to the criticism directed thereat.

There were two shots fired by appellant according to his testimony. He said they were both fired, as he thought, when deceased was coming at him, and were about two seconds apart. There would seem no reason for attempting to charge different legal aspects of self-defense as to the two shots in such case. Mrs. Norris, wife of deceased, stated that appellant fired two shots as fast as he could, and that her husband then fell and appellant shot at him again after he fell. Two bullet wounds were found in the body of deceased. There was another eyewitness, a negro, who went to the scene with appellant, who testified that there were only two shots, and that after appellant fired the first time deceased started running off and whirled and as he went to whirl appellant fired the second shot. We do not think under the facts as same appear in the record there was necessity for the application on behalf of appellant of separate legal phases pertaining to his right of self-defense at the time he fired the second or third shot, as the case might be, but appellant asked a special charge seeking to so apply the law of self-defense to each shot, and while the court refused this charge, he gave substantially the same law in the main charge.

It seems that during the argument of the case before the jury there arose a contention between counsel for the State and appellant as to whether or not appellant could have averted the necessity for taking the life of deceased by merely presenting his pistol as deceased advanced upon him, this being the theory of attack by deceased to which appellant testified. Thereupon, appellant asked of the court two special charges which, in effect, seem to reiterate propositions of law already embraced in the main charge.

We do not think the purpose of Article 737a is to require of the court additional charges after or during the argument, for the purpose of settling differences of construction of the language or effect of the charge, made by opposing counsel. An examination of Article 737a discloses that there are three grounds stated in said article wherein additional charges to that given before the argument begins, are permitted, to-wit: improper argument, additional charges asked by the jury, or when other evidence is permitted after the argument is begun. Our opinion is that when improper argument is used by the State, appellant could present to the trial court his request in writing that the jury be instructed that such argument, in the respects narrated, was improper and that the jury should disregard same. This, of course, when necessary, would present the matter here for review in a proper case.

Appellant presents a number of objections to questions asked by the State's counsel, and also to arguments made by the prosecution. These matters are quite lengthy and no good purpose would be served by setting them out. We have carefully examined each of same but are of opinion that no error appears in any of them as here presented.

It is made to appear that when the jury retired they stood ten for murder and two for manslaughter, and that some one made a remark to the effect that if a man was convicted of manslaughter he could not be thereafter convicted of murder. This remark is urged as misconduct of the jury. Only one juror testified on the hearing of the motion for a new trial. He said he did not know who made this remark; that it was incidental and had no weight with him. This was no such misconduct of the jury as would justify a new trial under our statute.

A new trial was asked because of the newly discovered evidence of one Elliott and one Mrs. Grayson whose affidavits were attached to the motion. We think no diligence was shown as to the testimony of Mrs. Grayson, it appearing that the testimony on the trial showed her to be present at a conversation then inquired about, the substance of which constitutes her newly discovered testimony. As to the testimony of the newly discovered witness Elliott, it appears from the record that a number of witnesses testified on this trial to sundry threats made by deceased shortly before the homicide. The testimony of said Elliott appears to be to a threat made by deceased some months prior to the homicide. We think this cumulative testimony for which a new trial should not be granted.

We have carefully examined the various contentions made by appellant, and being unable to discover reversible error in any of them, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

April 13, 1921.

LATTIMORE, JUDGE.—Insisting that we erred in holding admissible the declarations of Mrs. Norris to the defendant immediately after the homicide, appellant invokes the rule of the Casey case, 50 Texas Crim. Rep., 392, 97 S. W. Rep., 497; the Ex parte Kennedy case, 57 S. W. Rep., 648, and the Felder case, 23 Texas Crim. App., 477, but an examination of these authorities shows that they are not stating the law of declarations and statements made to the accused under such circumstances as to make them *res gestae* and to call for a response or reply. In the Felder case, *supra,* Judge Hurt discusses and recognizes the soundness of holding admissible a remark or exclamation made to the accused or heard by him and calling for a response. Authorities are numerous holding admissible statements to the accused of such character as to call for a denial or a reply. Jeffries v. State, 9 Texas Crim.

App., 598; Holden v. State, 18 Texas Crim. App., 91; Browning v. State, 26 Texas Crim. App., 432; Humphrey v. State, 47 Texas Crim. Rep., 262; Jennings v. State, 42 Texas Crim. Rep., 78; Rainer v. State, 67 Texas Crim. Rep., 87, 148 S. W. Rep., 735; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878; McKelvey v. State, 69 Texas Crim. Rep., 538, 155 S. W. Rep., 932; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 984; Keeton v. State, 59 Texas Crim. Rep., 316, 128 S. W. Rep., 404; Wynne v. State, 59 Texas Crim. Rep., 126. In determining the admissibility of evidence, the question of its truth does not enter. Mrs. Norris, in the statement objected to, charged appellant with killing her husband, speaking of him in said statement as "My darling" and as being the friend of the accused, but each statement was an accusation, and a reply was called for from appellant. There was nothing of such inflammatory character in the language used in that connection as called for a reversal at the hands of this court. Deceased was the husband of Mrs. Norris, and the evidence other than the said statement amply showed that they had three little children. No question is raised as to the nearness in point of time of the statement to make same *res gestae*. Discussing when and what may be introduced under this character of evidence, Judge Davidson in Castillo v. State, 31 Texas Crim. Rep., 151, says: "When *res gestae,* it is original primary testimony and can be introduced as such.'

Witness Jones for the defense gave evidence of statements by Mrs. Norris when he arrived at the scene, which was contradictory of her testimony. As ascertaining the circumstances as well as the mental condition of Mrs. Norris at the time such statements were made, it was not error to permit the State to ask Mr. Jones on cross-examination questions which sought fully to bring out the fact that Mrs. Norris was greatly agitated and was weeping constantly and was in such condition as to make her unable to talk, and that she was lying prostrate upon the body of her husband at the time the conversation took place, and that she and her little children were weeping, and that what statements she made were interspersed with sobs and tears.

Referring to appellant's complaint that the State was permitted to ask a witness for the defense on cross-examination if it was not true that each member of the jury was not a larger man than deceased, we can see no serious objection to such question. If a witness be testifying as to the relative size of deceased, or any other person, we think he may be properly called upon, in order that the jury may have an ocular demonstration of his ability to correctly estimate the size of the person attempted to be described, to express his opinion of said party as related to the size of some other person than in the presence of such jury. Ordinarily one's testimony as to the size of another would be based upon his observation and judgment from observing and seeing the party testified about. The accuracy of such testimony is to be tested and passed upon by the jury.

Reverting to the complaint that in the argument of the State remarks were made that appellant was going around and telling his various witnesses, who were named in said argument, what to swear, we observe that the State witness Hill testifying in rebuttal and upon a predicate laid while defense witness Mrs. Black was upon the stand. testified that Mrs. Black told him that "Frank Taylor (appellant) had been up here and told me what he wanted me to swear in his case;" that she said "he had been up there and told them what he wanted them to swear in that case." In this condition of the record we do not think the argument complained of seriously objectionable.

Appellant complains of various arguments of the State's attorney in that he called the wife of deceased "A poor little poverty, grief stricken widow," and also "A country raised widow," and also said that no verdict rendered could restore the deceased to life or aid this widow and her three children. In each of these instances it seems the court at the request of appellant instructed the jury not to consider the argument. We confess our inability to see how appellant could be injured, and refer to the language of Judge White in the Pierson case, 18 Texas Crim. App., 564, as expressing our view:

"As to the other remarks of the district attorney which were objected to, we can perceive no impropriety in them. It was the duty of the district attorney, if he thought the evidence established the guilt of the defendant, to demand his conviction. He demanded a conviction in the name of the State, in the name of law, justice and right, in the name of society, in the name of the widow and children of the deceased. We see nothing wrong in this. If the defendant committed the murder, he had acted against the peace and dignity of the State; he had outraged law, justice, right and society; he had clothed the wife in widow's weeds, and had made fatherless the children of the deceased; and each and all of these consequences of his crime demanded his conviction and punishment.

"It has become quite common to except to the remarks of counsel for the State in their addresses to the jury. We find such exceptions in the majority of contested cases that come before us. If we had sustained all these exceptions, the effect would have been to have virtually closed the mouths of prosecuting attorneys. While argument should be restricted legitimately, it should not be so unreasonably limited as to render it ineffectual. The State has rights in this respect as well as defendants. And in view of the frequency of exceptions of this character, we will take occasion here to say that before we will reverse a conviction because of remarks of prosecuting counsel, it must clearly appear to us, 1, that the remarks were improper, and, 2, that they were of a material character, and such as, under the circumstances, were calculated to injuriously affect the defendant's rights."

Appellant again urges that his special charges asked after argument had ended, should have been given. Article 737a Vernon's C. C. P., appears mandatory. Same says that after the argument has begun, "No

further charge shall be given to the jury unless required by the improper argument of counsel, or the request of the jury, or the introduction of other testimony." Unless the party seeking such charge at this stage of a trial, affirmatively show a right thereto under one of the conditions named by said statute, its refusal would not be held error. From the bill of exceptions taken to such refusal in the instant case, we gather that the State's attorney argued to the jury that under the facts before them appellant had no right to kill deceased if he could have averted the tragedy by other means. This position was combatted by appellant, and as supporting his position the special charges were asked seeking to have the jury told that under a given state of facts appellant did not have to resort to other means to avoid the killing.

If this court should lay down the rule that when a charge was duly presented to the accused and no exception taken to a matter, not of fundamental right, to which attention might be later directed by the argument;—that in such case special charges should then be given presenting such matter,—the flood gates would be opened. Under the facts in this record we are not prepared to say the argument of the State's attorney referred to was not proper. He had the right to argue that there was no self-defense in the case, even under the testimony of appellant himself, for the latter said while deceased was approaching the stall in the barn, in which appellant was, that he had something in his hand which appellant took to be a breast yoke, a double tree or stick of some kind, of which appellant could give no description; he further testified that deceased was at no time before he was shot in striking distance of appellant, and made no motion to strike or attempt to strike, and that while this condition existed appellant stepped out of the stall toward deceased and shot him. Appellant was six feet four inches tall; deceased a small man, being described by appellant's witness as "a little bitsy man." The only other eyewitness beside appellant was his hired hand who testified for the defense, and this witness said he saw nothing in the hands of deceased and saw him make no motion to strike appellant when shot or prior thereto. We are not at all of opinion that the State's attorney was indulging in "improper argument," as referred to in Article 737a, *supra*, when he may have argued that the record showed a state of facts under which appellant should have done other things before shooting. In cases where a charge is necessitated by improper argument, such as is referred to in said article of our statute, the law should not be restated, but the jury should be told that such argument is improper and they should disregard same.

We do not think upon a review of the facts of this case that they are such as to raise the issue of different phases of the law of self-defense based on the two shots fired by appellant. To our minds and under all the testimony they were so contiguous as to make it clearly a continuous transaction.

If appellant desired the testimony of Mrs. Grayson, for whose newly discovered testimony he asked a new trial, he should have taken steps during the trial to procure the testimony of said witness, it having developed that she was present at the conversation between Mrs. Black and State witness Hill. Appellant should then have secured subpoena for her, and if necessary asked for a postponement in order to procure her presence. Upon proper predicate laid when Mrs. Black was testifying, the witness Hill gave evidence as to certain statements made by her which she had denied. The purpose of the testimony of Mrs. Grayson appears to be to support Mrs. Black in this matter. We think such supporting testimony occupies the same attitude, so far as a continuance or a new trial to obtain same is concerned, as would the impeaching evidence. Sec. 202 Branch's Ann. P. C., and cases cited.

The threat stated in the affidavit of Mr. Elliott as being newly discovered evidence, appears never to have been communicated to appellant, and in addition to reasons stated in our former opinion, we do not think such evidence of a character as would likely produce a different result upon another trial. The threat was made about two months before the killing, and the record discloses that appellant and deceased had been together subsequent to the making of said alleged threat, and no effort appears on the part of deceased to execute same.

We have again carefully considered this record and each of the matters urged by appellant, but being of opinion that same present no reversible error, the motion for rehearing will be overruled.

*Overruled.*