R. H. MOEHLER v. THE STATE.

No. 8528.   Decided October 15, 1924.

No motion for rehearing filed.

### 1.—Murder—Venue—Presumed Proven—How Contested.

In all cases the court shall presume that the venue was proven in the court below, unless it affirmatively appears to the contrary by a bill of exceptions. See art. 938, C. C. P. A bill of exception, contesting the proof of venue, must set out all the testimony bearing upon the issue of venue, and must also contain a certificate of the trial judge that all of the testimony bearing upon the issue of venue is contained in the bill. See Allen v. State, 199 S. W., 633. Unless this rule is complied with, this court will hold that venue is shown.

### 2.—Same—Continuance—First Application—Granted When.

Where a case depends wholly upon circumstantial evidence, the law invites the development of every circumstance reasonably calculated to illumine the transaction. So where state's theory is that motive of killing was to rob deceased of his automobile, and appellant had testified that he bought the automobile from the deceased and paid him the sum of five hundred and twenty dollars for it, he should have been granted a continuance to secure the testimony of two witnesses, by whom he represented that he could prove that about the time of the killing they had seen appellant with a large roll of money, some six hundred dollars or seven hundred dollars; appellant having used due diligence to secure the attendance of said witnesses. See Noftsinger v. State, 7 Tex. Crim. App., 322; Washington v. State, 8 Tex. Crim. App., 322.

### 3.—Same—Bills of Exception—Refusal of Continuance—Filed When.

A bill of exception to refusal of the court to grant a first application for a continuance may be filed after the ending of the term, if within the extension of the time allowed for filing of bills of exception by the court, and when so filed the bill cannot be disregarded because it was filed after the term ended.

### 4.—Same—Confession of Defendant—When Admissible—Under Arrest.

Where deceased, in an effort to fix the crime on another, even though under arrest, discloses to a witness location of certain physical evidence, of an incriminatory character and such physical evidence is found, all of accused's communications to such witness are admissible. See art. 810, C. C. P; Patterson v. State, 231 S. W., 764; Williams v. State, 225 S. W., 117; Hilliard v. State, 222 S. W., 553. A mere declaration however, made while under arrest, though incriminatory, is not admissible except in the manner prescribed by our statutes, art. 810, C. C. P., Branch's annotated Tex. P. C., sec. 60.

5.—Same—Circumstantial Evidence—Admissibility—Latitude Indulged in.

The rules governing the admissibility of circumstantial evidence permits the exploring of all avenues which lead to the truth. Admitting proof of the finding of a piece of wire of a peculiar appearance found at the place where the body of the deceased was discovered, was not error. Nor was admission of proof that appellant's son was arrested at the same time that his father was arrested, error. Objections to such testimony, goes to its weight, rather than to its admissibility.

6.—Same—Witness—Wife of Accused—Cross-Examination.

Where the accused introduces his wife as a witness in his behalf, it is permissible for the state, on cross-examination to inquire into all matters germane to her testimony in chief, and in this case the cross-examination of accused's wife was within the scope of the rules of evidence as construed by this court. See Art. 795, C. C. P., Vernon's Tex Crim. Stat., Vol. 2, P. 727 note 2; Bell v. State, 88 Tex. Crim. Rep., 64.

7.—Same—Evidence—Practice—On Appeal.

Exceptions to the action of the trial court in the introduction of evidence, presented by proper bills of exceptions must be reviewed on appeal, though no mention is made of it in the motion for new trial. See Sessions v. State, 81 Tex. C. R. 424, and other cases cited.

Appeal from the District Court of Eastland County. Tried below before the Hon. E. A. Hill, Judge.

*B. D. Shropshire* and *Tom Cunningham,* for appellant.

*Elzo Been,* Assistant County Attorney, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at death.

The evidence was circumstantial.

Appellant and deceased left Cisco late in the evening of August 10, 1922, the deceased stating that he was going to take a man to DeLeon. The parties were seen together in the car of the deceased at Carbon, which is in Eastland County, and the deceased there inquired the way to DeLeon. Gorman, also in Eastland County, was some miles distant from Carbon. The parties left Carbon after sundown. It was practically dark. The conditions were such that it would take from one to two hours to drive from Carbon to Gorman, a distance of about ten miles.

The State's evidence shows that Maples was not seen alive at any time after leaving Carbon on the night of August 10th. The appellant testified, however, that he and Maples traveled together in the latter's automobile to a point in Coryell County near a village called Levita.

Appellant had a brother residing on a farm about three miles from the village mentioned. According to the appellant's testimony, he and the deceased arrived at the farm mentioned early in the morning of the 11th of August, having spent the night together on the way; that upon

their arrival at the farm of the appellant's brother, the appellant pur-
chased from the deceased his automobile and paid him the sum of
$520; that this fact was known to the brother of the appellant; that
after meeting the brother, the appellant went to the home of the
brother, or into his pasture, to hunt for some mules while the brother
undertook to convey Maples to Levita; that the brother, after an ab-
sence of half an hour, returned to his farm and subsequently admitted
to the appellant that he had killed the deceased.

Some seven months subsequent to his disappearance the remains of
the deceased were found in a pasture near the home of the appellant's
brother in Coryell County. The remains gave evidence of a violent
death by the crushing of the head. Near the body was found a piece
of wire and the hat of the deceased.

There was some testimony that a search was made along the route
between Carbon, in Eastland County, and the place where the body
was found; that no wire like that which was found near the body of
the deceased could be found except at a point on the road near Carbon
at a creek called Nash's Creek. According to the testimony there were
certain peculiarities about the wire which was found near the body of
the deceased, which peculiarities were not observed at any other point.

Appellant's brother testified that on the morning of the 11th of
August his attention was attracted to the starting of a Ford car in
the Whitehead Pasture at a point about 140 yards from the place where
the body of the deceased was afterwards found, which was about 1100
yards from the house where the witness resided. The car mentioned
was driven by the appellant, and in it he went to the home of the
witness.

Appellant, according to his testimony, after learning from his
brother that the latter had killed the deceased, felt that he must leave
the country and did go in the car of the deceased, taking his family
with him. He traveled over the country and camped out for a long
time until he was finally arrested in Wilson County. This was after
the body of the deceased was found.

After his arrest, according to the State's testimony, appellant had a
conversation with the witness Gray which led to the finding by the
witness and appellant's brother of a book which was hidden under a
rock near the place where the body was found, which book was the
property of the deceased.

Complaint is made of the refusal of the court to instruct the jury
that the venue was not proved, and for that reason to return a verdict
of not guilty.

The bill of exceptions taken to the refusal of the court to give a
peremptory instruction contain only this language:

"That the State's evidence showed that the defendant and the de-
ceased left the town of Carbon about sundown on the evening of Au-

gust 10th, 1922, going in the direction of Gorman, Texas, which was about 10 or 12 miles east of Carbon and in the direction of the county line of Eastland and Comanche Counties, and were not seen any more in said Eastland County, and that the dead body of the deceased was found in Coryell County, Texas, about 123 miles from Eastland, Texas, on or about the 2d day of March, A. D., 1923, and defendant prays the Court to approve this bill of exceptions and that it be made a part of the record in this cause, which is accordingly done."

In Article 938, C. C. P., it is stated:

"* * * in all cases, the court shall presume that the venue was proved in the court below, * * * unless such matters were made an issue in the court below, and it affirmatively appears to the contrary by a bill of exceptions."

In construing this statute, this court, in McGlasson's case, 38 Texas Crim. Rep., 360, used this language:

"It occurs to us that this statute requires the court to indulge the presumption that the venue was proved in the court below, unless the bill of exceptions shows affirmatively that it was not proved. This would seem to apprehend that, before we can treat the venue as not proved, the court must either certify that the evidence did not establish the venue, or that said bill of exceptions should contain all the testimony in the case tending to show venue, and certify that same was all the testimony bearing upon that issue; and from this statement of the testimony it affirmatively appears that the venue in the case was not proved. If this be a true construction of said article, then the bill in question does not comply with the requirements of the law."

This construction of the statute has been consistently applied. See Allen v. State, 199 S. W. Rep., 633, and cases therein cited. Tested by this rule, it seems that the bill of exceptions is incomplete in that it fails to contain any certificate of the trial judge to the effect that all the testimony bearing upon the issue of venue was contained in the bill. From the statement set out in the bail, it does not affirmatively appear that the venue was not proved. We have examined the statement of facts containing about 350 pages and embracing the testimony of nearly 100 witnesses with the view of ascertaining whether in fact the record would affirmatively show that the homicide was not proved to have taken place in Eastland County. The record, from the State's testimony, makes it clear that the deceased was last seen alive in company with the appellant at Carbon, in Eastland County, and that at that time the appellant and deceased were riding together in the car belonging to the deceased and were on their way to DeLeon in Comanche County, a distance of some twenty-five or thirty miles from Carbon. No witness, either for the State or the appellant saw the deceased after he was seen in Carbon; and the appellant's theory that he and the deceased continued in company with each other until they reached

98 T. C.—16.

Levita in Coryell County is controverted by the testimony of the appellant's brother. In our opinion, the evidence fails to show that the homicide did not take place in Eastland County. On the contrary, the evidence is such as would warrant the jury in finding that the deceased met his death in Eastland County. The court was not in error in refusing to instruct the jury that venue was not proved. The question of venue, under the evidence, was one of fact which might with propriety be determined by the jury under proper instruction.

A first application for a continuance was made on account of the absence of several witnesses therein named. The action of the court in overruling the motion was made the subject of exception and is properly brought forward for review. From the bill it is made to appear that a subpoena was issued for Mr. and Mrs. Luther Tucker who were residents of Bell County. These witnesses, according to the motion which is not controverted upon that point, would have testified that about one week before the homicide, the appellant had in his possession a roll of money containing $600 or $700. The trial was set for the 29th day of October. Subpoena was served on the 21st of that month. At the time the case was called for trial, and the motion for a continuance was presented, the sheriff's return upon the subpoena had not been made and did not reach the court until after the evidence was closed.

Contesting the application, the prosecuting officer stated in writing, under oath, that he had been informed that the witnesses mentioned, namely, Mr. and Mrs. Luther Tucker, "are now upon the road to this Court from Bell County, and will be in attendance on the trial in this case before the evidence is begun." It further appears from the bill that the witnesses did not appear and during the progress of the trial, counsel for the appellant, at divers times, insisted upon the presence of these witnesses and requested the issuance of additional process for their attendance.

As original testimony, the State introduced evidence to the effect that the deceased was last seen alive in company with the appellant; that the appellant was in possession of the automobile of the deceased; that he made use of it to flee the country. These adverse circumstances the appellant undertook to explain by his testimony and by that of his wife, both of whom were intensely interested witnesses and both of whom testified to the possession by the appellant of a sum of money shortly before the homicide. In the cross-examination of both the appellant and his wife, many facts were developed which were available to the jury to discredit the truth of the appellant's testimony and the verity of his defensive theory. The case being one depending wholly upon circumstantial evidence, the law invited the development of every circumstance reasonably calculated to illumine the transaction and favored the exploration of every avenue that might possibly lead

to the truth. See Noftsinger v. State, 7 Texas Crim. App., 322; Washington v. State, 8 Texas Crim. App., 377; and other cases collated in Branch's Ann. Tex. P. C., Sec. 1872.

The right of each party to introduce relevant testimony to contradict, explain or minimize the force or effect of adverse testimony is fundamental and has often been so declared by the decisions of this court. See Arnold v. State, 9 Texas Crim. App., 435, and other cases listed by Mr. Branch in his Ann. Tex. P. C., Sec. 97, subdivision 9.

The relevancy of the fact that the appellant possessed a sum of money equal to that which he claimed to have paid the deceased for his automobile could not, under the record, become a subject of controversy. This was recognized by the trial court in receiving the appellant's testimony to that fact.

The absence of the two witnesses who would have corroborated the appellant's testimony was due to no fault of his. He used diligence which resulted in the service of subpoena upon them in ample time to secure their attendance; he pressed his demand for their attendance throughout the trial. That they would have given the testimony is not controverted. It cannot be said that their testimony would not have shed light upon the issue which involved the life of the appellant. Applying the principles to which reference has been made and the precedents cited above, the receipt of similar testimony was sanctioned upon behalf of the State in the case of Lovel v. State, 93 Texas Crim. Rep., 621.

It is believed that the learned trial court was not warranted in refusing to grant the appellant's first application for a continuance, and that in the light of the evidence the error should have been corrected by the granting of a new trial.

The bill of exceptions to the action of the court in refusing to continue the case, filed within the extension allowed by the court, cannot be disregarded because it was filed after the term ended. Nothing in Reese v. State, 249 S. W. Rep., 847, or the authorities cited therein, authorizes such action.

After the appellant was arrested and while he was in jail, he, according to one of the State's witnesses, told the witness to go to a certain place near Clyde Mohler's house and search a thicket near where the body of the deceased was found and to turn up the rocks until he found something and then turn it into the State and tell them that Clyde Mohler told him where it was. Pursuant to this information a search was made and a certain memorandum book (which according to other evidence was identified as the property of the deceased), was found hidden under a rock in the vicinity of the place where the body was found. The receipt of this testimony was not obnoxious to the statute protecting one accused of crime against him of verbal confession made while under arrest and unwarned for the reason that the

finding of the book pursuant to the information, brought the contention within the terms of the exception embraced in the statute mentioned which sanctions the receipt in evidence of statements of circumstances found to be true and which conduce to establish the guilt of the accused. See Art. 810, C. C. P.; also, Patterson v. State, 231 S. W. Rep., 764; Williams v. State, 225 S. W. Rep., 117; Hilliard v. State, 222 S. W. Rep., 553.

The purported statement of the appellant coming from the same witness that he had asked the witness to make some frame-up to contradict the story given by the appellant's brother, Clyde Mohler, in order to prevent the appellant from going to the gallows seems to have been obnoxious to the statutory rule excluding the unwarned verbal declaration of the accused while under arrest to be used by the State to establish his guilt. Art. 810, C. C. P.; Branch's Ann. Tex. P. C., Sec. 60. In our judgment, the court's limitation of this testimony for · impeaching purposes did not, under the present record, cure the error in receiving it. Morales v. State, 36 Texas Crim. Rep., 234; Branch's Ann. Tex. P. C., Sec. 74.

Exceptions to the action of the trial court in the introduction of evidence presented by proper bill of exceptions must be reviewed on appeal though no mention is made of it in the motion for new trial. See Sessions v. State, 81 Texas Crim. Rep., 424; Bargas v. State, 86 Tex. Crim. Rep., 217; Taylor v. State, 89 Texas Crim. Rep., 112; Vaughn v. State, 208 S. W. Rep., 527; Bargas v. State, 126 S. W. Rep., 173; Manley v. State, 244 S. W. Rep., 533.

It is believed that the court committed no error in receiving in evidence the fact that the piece of wire which was found at the place where the remains of the deceased were found on the ground that it was part of the *res gestae* of the discovery. Nor did the court err in receiving the testimony tending to show that there were peculiarities about this wire which coincided with peculiarities in a wire gotten from a gap at a creek between Carbon and Gorman in Eastland County and that these peculiarities were uncommon. Objections to this testimony go to its weight. It was a matter coming under the rules governing circumstantial evidence which favors the exploring of all avenues which lead to the truth; which the State was entitled to have submitted to the jury for what it was worth as indicating that the homicide had taken place in Eastland County and that the wire had been brought to the place where the remains were found by the appellant.

Nor did the court err in receiving the testimony touching the railroad time-table showing the schedule of trains running between Cisco and DeLeon. This testimony tended to combat the appellant's theory and to show that in selecting the service-car run by the deceased, the appellant adopted the more expensive and more inconvenient means of travel.

The fact that the appellant's son was arrested at the same time as the appellant may have been pertinent. Any mistreatment of the son by the officers while in confinement was properly excluded.

The wife of the appellant was called by him as a witness to identify a letter which was introduced in evidence, which she testified that the appellant had written to her and which purported to have come from Tuscola, Texas. The cross-examination conducted by the State touching the knowledge of the recipient of the letter did not, in our opinion, infringe on the statute inhibiting the use of the wife against her husband. The law permits a germane cross-examination, and so far as we are able to discern, that conducted was within the scope of the rules of evidence as construed by this court. Art. 795, C. C. P.; Vernon's Tex. Crim. Stat., Vol. 2, p. 727, note 2; Bell v. State, 88 Texas Crim. Rep., 64.

Because of the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*