J. H. CURTIS v. THE STATE.

No. 14414.  Delivered November 25, 1931.
Rehearing Denied February 17, 1932.

The opinion states the case.

*T. J. Ramey,* of Sulphur Springs, and *Clark, Harrell & Clark,* of Greenville, for appellant.

On the question that evidence of the mother of the deceased, as to what was said and done at the time and place of the homicide by her and others, was inadmissible because it was a conclusion. (*Cole v. State,* 75 S. W., 527; *Couch v. State,* 254 S. W., 694; *Casey v. State,* 97 S. W., 496; *Peacock v. State,* 107 S. W., 346; *Wade v. State,* 90 S. W., 502; *Aldridge v. State,* 241 S. W., 145; *Branch's Criminal Law,* p. 201, and sec. 436, p. 264; *Rice v. State,* 100 S. W., 951.)

Appellant, by his attorneys, contended that he was in a difficulty with and shot at A. B. Mallow, father of the deceased, and did not intend to shoot the deceased. On the question that A. B. Mallow's difficulties and abuses of other people known to appellant at the time of the shooting was material and admissible. (*Leal v. State,* 17 S. W. (2d) 1065; *Messimer v. State,* 222 S. W., 583; *Bullock v. State,* 165 S. W., 199-

200; *Smith v. State,* 148 S. W., 701, and *Spencer v. State,* on rehearing, 122 S. W., 128.)

On the question of objection to court's charge in failing to present self-defense as against the assault by murder. *(Venters v. State,* 83 S. W., 832.)

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

On the question that the evidence of the murder of the deceased was admissible as res gestae. *(Branch's* P. C., sec. 83.)

On the question that appellant's bill of exception was defective in not showing that the defendant was not present at the time statements testified to by the mother of the deceased were made. *(Gonzales v. State,* 272 S. W. (2d) 777.)

On the question as to whether the evidence of the mother of the deceased was opinion evidence. *(Jackson v. State,* 27 S. W. (2d) 1102; *Branch's* P. C., sec. 166; *Robbins v. State,* 166 S. W., 528.)

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for six years.

Appellant and A. B. Mallow lived on adjoining places. A division fence between their property had been the cause of several quarrels between the parties. On the occasion of the homicide A. B. Mallow, Pennington Mallow (deceased), and Orville Mallow, who were the sons of A. B. Mallow, went to the fence for the purpose of cutting a ditch along its side, on Mallow's property. A. B. Mallow was engaged in clearing weeds along the fence. He had set the weeds on fire. Touching the fatal difficulty, the state's testimony was, in substance, as follows: Appellant approached the fence and asked A. B. Mallow what he was going to do. Mallow replied that he was going to dig a ditch in order to take care of the water that was running over his land. At this time appellant was 25 or 30 feet from Mallow. Appellant took Mr. Mallow to task for having set fire to the grass, stating to him that the smoke made his wife sick. Mr. Mallow replied that his wife had come out and helped the boys fight the fire and it did not make her sick. Appellant said: "You are just a damn liar," and pulled a pistol out of his coat pocket. Seeing that he was going to shoot him, Mr. Mallow turned his back toward appellant. Appellant said: "I have been waiting to get you for a long time" and fired a shot at Mallow, which took effect in his arm. At the time the shot was fired Mr. Mallow was 25 or 30 feet from appellant. After shooting Mr. Mallow in the arm appellant fired a shot at Pennington Mallow, deceased, who was 25 or 30 feet from his father. Deceased fell to the ground mortally wounded, and died in approximately ten minutes. Appellant then fired a shot at Orville Mallow. This shot did not take effect. The wife of A. B. Mallow, upon

hearing the shots, ran to the scene of the difficulty. Appellant fired two shots at Mrs. Mallow as she approached, and then turned and walked away.

Appellant testified, in substance, that when he saw the fire he believed that his fence was burning and went to the scene of the homicide to see about it; that when he spoke to Mallow about the fire damaging the fence, Mallow cursed him, calling him a G— d— lying s— of a b—; that he replied that Mallow was a dirty liar; that Mallow then started toward him, with a hoe in his hand, saying "I will kill you"; that Mallow struck at him and he dodged; that Mallow made a demonstration as if to cross the fence; that the division fence was between him and Mallow; that when Mallow came toward the fence as if to cross it, he drew his pistol and fired, believing that Mallow was going to kill him; that Mallow had theretofore made threats against his life; that he did not see Orville Mallow or deceased, and fired no shots at either of them; that he fired all of the shots at A. B. Mallow in self-defense; that he and deceased were on friendly terms, and he had no intention of shooting him, and did not know at the time that one of the shots he fired struck deceased. Appellant and his witnesses testified to threats A. B. Mallow had made against his life.

Bill of exception No. 1 recites that appellant presented a motion to the court before any evidence was introduced asking that the district attorney be instructed to refrain from introducing any evidence as to what was said by deceased and the members of his family at the scene of the homicide after deceased had been shot and during the time he was dying. It was averred in the motion that the testimony the state would seek to introduce threw no light on the issues to be decided, and would serve no purpose other than to influence the minds of the jury. It was alleged in the motion that it would be undisputed that appellant killed deceased by shooting him with a pistol. The court overruled the motion. There is nothing in the bill of exception to show that the testimony the state would seek to introduce was inadmissible. If the testimony was relevant and material, the fact that appellant admitted he killed deceased would not authorize appellant to determine the method to be employed by the prosecuting attorney in developing the state's case.

Bill of exception No. 2 presents the following occurrence: The mother of deceased wept while giving her testimony. After testifying that she went to the scene of the homicide immediately after deceased had been shot, she stated that deceased said to her: "Mr. Curtis (appellant) has killed daddy and he is going to kill you, go back." The witness testified further: "And Mr. Mallow hollered 'For God's sake go back, he is going to shoot you', and I went on to Pennington (deceased), and when I got to him he fell in my arms and was so large, he knocked me down and we all went down together and Mr. Mallow was down on

his feet and hands crawling." Appellant objected to the testimony of the witness on the ground that it was irrelevant, prejudicial, inflammatory and not pertinent to any issue in the case; and on the further ground that the declarations of deceased constituted an opinion. Another ground of objection was that said declarations were not made in the presence and hearing of appellant. It is not certified in the bill of exception that appellant was not present. If appellant was present all of the testimony of the witness would appear to have been admissible. Taylor v. State, 89 Texas Crim. Rep., 112, 229 S. W., 552. The mere statement of the ground of objection that appellant was not present, is not a certificate of the trial judge that the facts forming the basis of the objection were true. Branch's Annotated Penal Code, sec. 209; Fuller v. State, 50 Texas Crim. Rep., 14, 95 S. W., 541. The occurrence testified to by the witness was res gestae. It is unnecessary to determine whether the opinion of deceased that appellant was going to shoot his mother, being res gestae, was properly admitted. A part of the declaration of deceased was that appellant had killed his father. Appellant shot deceased's father shortly before he shot deceased. As far as the bill of execption reflects the matter, the declaration to the effect that appellant had killed deceased's father was admissible. If the declaration that appellant was going to kill the mother of deceased was inadmissible,—and this is not conceded,—it is observed that appellant's objections were leveled at all of deceased's statements. A part of the statement being admissible and there being nothing in the objections to directly challenge or single out the inadmissible declaration, the bill of exception is too general to be appraised. Branch's Annotated Penal Code, sec. 211; Payton v. State, 35 Texas Crim. Rep., 510, 34 S. W., 615. The opinion is expressed that the bill of exception fails to reflect reversible error. See Simpson v. State, 97 Texas Crim. Rep., 57, 263 S. W., 273; Claxton v. State, 109 Texas Crim. Rep., 345, 4 S. W. (2d) 452.

It is recited in bill of exception No. 3 that deceased's father was permitted to testify that deceased died in his lap. We are unable to reach the conclusion that the bill of exception reflects error. Deceased died ten minutes after he was shot. It was incumbent upon the state to prove his death. It was not improper to prove that he died in his father's lap. Claxton v. State, supra; Simpson v. State, supra. The details of deceased's death were a part and parcel of the transaction which resulted in the homicide.

Bill of exception No. 7 recites that the court declined to permit appellant to prove by his wife's deposition that it was more than an hour after the difficulty before she learned that deceased had been shot, and further, that she learned such fact from some of the neighbors. It is recited in the bill of exception that the testimony showed that during the difficulty appellant's wife had heard some one hollering in the direction her hus-

band had gone, and that she met her husband coming from the scene of the difficulty. It appears that appellant offered the rejected testimony for the purpose of supporting his theory that he did not know that he had shot deceased, it being his position that his wife's statement was tantamount to testimony that he did not tell her when he approached the house that he had shot deceased. Stated in another way, the fact that he did not tell her, according to appellant's contention, tended to show that he had no knowledge that he had killed deceased. It appears on page 72 of the statement of facts that in answer to a cross interrogatory, the witness replied as follows: "It is not a fact that I heard Pennington Mallow (deceased) say that 'he has killed me' or words to that effect, and that I knew that he had been shot and mortally wounded and that it was not necessary for anyone to tell me that he had been shot, as I knew nothing of it for more than an hour afterwards."

Further the deposition of the witness was to the effect that appellant went to town about thirty minutes after the shooting, leaving her at home. If the statement that neighbors informed her of the death of deceased should have been received in evidence, we would not feel warranted in ordering a reversel because of its rejection. Such testimony was not calculated to lend greater support to appellant's contention that he did not know he had killed deceased than was that part of the deposition of appellant's wife hereinbefore quoted.

Appellant excepted to the charge of the court on the ground that the issue of self-defense against the acts of deceased and his brother Orville Mallow was not submitted. The opinion is expressed that the issue was not raised. Appellant testified that he did not know he shot deceased. He denied that he fired shots at anybody but A. B. Mallow. He testified that A. B. Mallow, deceased's father, approached him with a hoe. He said he did not see deceased and Orville Mallow at all at this time. There was no testimony that either deceased or Orville Mallow attacked appellant or made any demonstration toward him. The state's testimony was to the effect that deceased and his brother ran to their father after appellant shot at him (the father). Appellant, as stated before, testified that he did not see them.

Appellant requested the court to charge the jury in effect that he should be acquitted unless he intended to shoot deceased. Appellant defended on the ground that the father of deceased was trying to kill him with a hoe, and that, in firing at him in his own necessary self-defense, he unintentionally shot deceased. The charge of the court submitted appellant's theory of self-defense. After defining self-defense, the court instructed the jury that if they had a reasonable doubt as to whether appellant was shooting at deceased's father, A. B. Mallow, in self-defense appellant should be acquitted of the charge of killing deceased. Where the accused, "in exercising his perfect right of self-defense acci-

dentally kills a bystander or a third person" he is guilty of no offense. Branch's Annotated Penal Code, sec. 1901; McCullough v. State, 62 Texas Crim. Rep., 126, 136 S. W., 1055; Hobbs v. State, 68 Texas Crim. Rep., 593, 151 S. W., 809. If the accused, acting with malice aforethought, shoots at one person and kills a bystander or a third person, he is guilty of murder with malice. If he does not act with malice aforethought he is guilty of murder without malice. See Branch's Annotated Penal Code, sec. 1901. See also Jones v. State, 89 Texas Crim. Rep., 355, 231 S. W., 122. Under the evidence, the charge sought by appellant would not have been a correct statement of the law.

Paragraph 9 of the court's charge reads as follows: "In all prosecutions for felonious homicide the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, and in case the defendant is found guilty, all such facts, if any, must be considered by the jury in determining the punishment to be assessed."

Appellant interposed no objection to the foregoing charge. As shown by bill of exception No. 13, the district attorney stated, in his argument to the jury, that all the evidence thta had been introduced which tended to show former difficulties between appellant and A. B. Mallow was permitted by the court under paragraph No. 9 of the charge (the paragraph hereinbefore quoted). The district attorney then said: "This charge of the court which I have just read means that you cannot consider any of that evidence in deciding the guilt or innocence of this defendant, but the court tells you that you can consider it only in determining the punishment to be assessed by you against him." The court overruled appellant's objection to the argument. The bill of exception is deficient in failing to show the nature of the prior difficulties between appellant and A. B. Mallow. As far as the bill reflects the matter, the prior difficulties referred to might have had no bearing on the question of guilt or innocence of appellant. In the absence of some information from the bill of exception touching the nature of the difficulties to which reference was made, we are unable to determine whether, if improper, the argument was harmful.

Failing to find reversible error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

406

LATTIMORE, Judge.—Appellant insists that it was erroneous for the court to refuse to grant a motion made by him before any evidence was offered, and without setting out in his said motion the evidence referred to,—the purpose of the motion being to secure an order from the court directing the state's attorney not to bring out upon the trial any facts concerning or describing the death of the party for whose murder appellant was on trial, or what was then said by deceased or any other person. In our opinion one accused of murder can not come into court and admit that he does not dispute the fact that the deceased came to his death from wounds inflicted by the accused, and upon such admission demand an order excluding in advance of its offer upon the trial, evidence generally referred to therein, which might appear competent and material when offered later and during trial. The correct rule is stated in Couch v. State, 93 Texas Crim. Rep., 36, 245 S. W., 692, viz: that the state could not be bound by a matter stated in an ex parte motion without being offered an opportunity to present the matters therein referred o. Proper practice would have been when the matter thus deemed objectionable was offered by the state, if at all, to then have the jury retired and the matter heard by the trial court and its admissibility then passed on, and if the ruling be adverse to the accused he can bring such ruling forward by proper bill of exception for review by this court.

The next ground of the motion is that we erred in upholding the action of the trial court in refusing to submit to the jury the issue of self-defense on the part of appellant against an attack by deceased, and as supporting this contention he refers to certain testimony put before the jury by the state. We have examined same carefully. We think appellant misapprehends the purpose and legal effect of the testimony referred to. It appears that appellant's daughter, a witness for the defense, testified to movements of the deceased just before the shooting which would tend to put deceased at a point corroborative of appellant's claim that he did not shoot at or intend to shoot deceased,—but only shot at the father of deceased and accidentally struck deceased. In this condition of the record it appears that the state then offered a part of a statement made by this witness immediately after the shooting in which she testified to apparently a different state of facts from that given upon the trial. This was offered by the state evidently for the purpose of impeachment, and would not afford basis for appellant's present claim that it supports the proposition of self-defense against an attack by deceased.

In his extended argument, in support of his motion, appellant further insists that we were wrong in our disposition of his bill of exception No. 13, complaining of argument of the state's attorney made in discussing the court's charge. We have carefully reviewed the facts of the case with a desire to see if there be possibility of harm to appellant from said

argument. Without approving the statement made by the district attorney, we are not led to believe same capable of misleading the jury who were expressly told in the charge of the court below that they must receive the law from the court and be bound to follow that law as given in the charge. In Gallagher v. State, 55 Texas Crim. Rep., 50, 115 S. W., 46, there was no discussion of the argument made by the state's attorney, and no expression in the opinion, as we understand it, different from what we have here said.

Not being able to agree with any of the contentions made by appellant, his motion for rehearing will be overruled.

*Overruled.*

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.