TOM CASEY v. THE STATE.

No. 3477.   Decided November 9, 1906.

**1.—Murder in First Degree—Declaration of Bystander—Res Gestæ.**

Upon a trial for murder, there was no error in refusing to permit defendant to introduce testimony as to declarations of bystanders which occurred immediately after and near the place of the homicide; the declarant not having participated in the transaction. This was not res gestæ.

**2.—Evidence—Hearsay.**

Where upon trial for murder the evidence showed that sometime before the homicide there was an altercation between deceased and defendant's friend about some old debt, it was error to admit the declarations of deceased with reference to said debt made after said altercation and in absence of defendant, and which said declarations had never been communicated to the defendant. .

**3.—Stenographic Notes—Impeaching Testimony.**

Upon a trial for murder there was no error in permitting the stenographer to read from his notes taken at the habeas corpus trial, for the purpose of impeaching the witness for defendant; the stenographer having sworn to the accuracy of his notes.

**4.—Same—Evidence—Remoteness of Other Crimes—Credibility of Witness.**

On a trial for murder it was improper to introduce testimony attacking the credibility of a witness, by showing that he was indicted of a felony some twenty years before.

**5.—Impeaching Testimony—Rebuttal—Supporting Testimony.**

Where upon trial for murder the State had introduced testimony of some remote offenses against defendant's witness to impeach him, and that the county attorney had produced the stenographic report of said witness' testimony at a previous trial, to show that he had sworn differently to what he had on the trial, it was error to refuse defendant to introduce testimony showing that his said witness had immediately after the homicide stated that he was an eye-witness to the killing, etc., and that the man who did the killing had done so in self-defense, which was a similar statement to the one the witness had made upon the trial.

**6.—Same—Motive—Manslaughter—Charge of Court.**

Where upon trial for murder the evidence showed that the State's theory was that defendant became angry on account of a difficulty between his friend and deceased; that he then formed the intent to kill deceased, and went after a gun and shot and killed him; and the theory of defense was that he got this gun to keep it out of the way of his friend and that he accidentally met deceased who drew a pistol upon defendant and his friend, and that then defendant snatched the gun out of his son's hand and killed deceased, and there was no evidence that defendant and deceased were acquainted; the court erred in not charging on manslaughter.

**7.—Same—Charge of Court—Provoking the Difficulty.**

Where upon trial for murder the court charged on provoking the difficulty but failed to instruct the jury that unless defendant had the intention of killing, he would not be guilty of any higher grade of defense than manslaughter, there was error.

Appeal from the District Court of McLennan. Tried below before the Hon. J. T. Sluder, Special Judge.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*V. A. Bryan, L. T. Williams, Taylor & Gallagher,* for appellant.— On question of impeaching witness and offering testimony in rebuttal to sustain declaration previously made: Kipper v. State, 77 S. W. Rep., 616; Hudson v. State, 90 S. W. Rep., 177.

*J. E. Yantis,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

Appellant's ninth assignment of error complains that the court erred in refusing to permit appellant to prove by witness A. B. Brandon, the res gestæ statement of the boy, Ry Casey, occurring on the sidewalk in front of the building where the killing occurred, and within

fifteen feet of the immediate place of the killing, and about one and a half minutes after the killing while said boy was greatly agitated and crying. The statement made to the witness Brandon by Casey was to the effect that deceased snapped his pistol at his father twice, and that his father then grabbed his gun away from him, Ry Casey, and shot deceased. Declarations of bystanders are not admissible as res gestæ. There is no evidence that Ry Casey was a particeps criminis to the crime at all, but was merely present and his father jerked the gun out of his hand and killed deceased with it.

The tenth assignment complains that the court permitted the State to prove by witness Bob Hollowell that deceased, Will Wade, a short time before the killing, and immediately after the difficulty between deceased and George Madden, stated in the presence of said witness, the following: "Oh! that is all right now; that debt is paid, and I am even with him. He has done paid it and I am satisfied." This declaration was in the absence of appellant and never communicated to him prior to the difficulty. The record shows that appellant and George Madden were friends, and that they had started on a fishing trip in Western Texas and New Mexico; that they lived about fifteen miles from Waco; that George Madden and Ry Casey (son of appellant) had come to Waco on the day of the killing in a wagon, and had put up at Ham's Wagon Yard. Defendant had come in later on the train. In the early part of the afternoon, deceased made an assault upon George Madden, in his (deceased's) saloon, about some old debt or dishonored check transaction. George Madden was drunk. George Madden was a brother of Henry Madden, who was with defendant and Ry Casey at the time of the homicide. The killing by appellant of deceased grew out of the beating deceased gave George Madden. This testimony was not admissible.

Appellant also complains because the court permitted the stenographer to read from his stenographic notes, taken at the habeas corpus trial, and not from any independent recollection of what the defendant's witness, J. L. Hewitt testified on said habeas corpus trial. The stenographer swore to the accuracy of his notes, and from that read certain excerpts which were introduced by the State for the purpose, and properly so, of impeaching the witness Hewitt. This was correct. See Stringfellow v. State, 42 Texas Crim. Rep., 588.

The 13th assignment complains that the court refused to permit appellant to read other portions of the stenographic report of the witness Hewitt's testimony. The bill presenting this, like many other bills in this record, is voluminous; but, in view of the fact that this case will be reversed, we hold that any testimony explaining, modifying or contradicting the portion of the record introduced by the State of the witness Hewitt's testimony, could be introduced by appellant; but only such as did so.

The 12th bill of exceptions complains that the court erred in permitting State's counsel on cross-examination by witness Hewitt to

ask and prove by him that said witness had been tried for cattle stealing in the year 1885. The bill is defective, in that it does not show when appellant was indicted. However, the facts show that he was indicted for cattle theft and the indictment dismissed. If the testimony on another trial shows that this indictment was returned in 1885, then the testimony should not be admitted. For a discussion of this matter, see Bowers v. State, 71 S. W. Rep., 285; Stull v. State, 84 S. W. Rep., 1059; Busby v. State, 86 S. W. Rep., 1032; Wesley v. State, 85 S. W. Rep., 802. If no testimony is introduced attacking the credibility or reputation of witness Hewitt for truth and veracity, then it would not be permissible to introduce witnesses Compton and Matthews to prove his good reputation in that respect.

Bill No. 19 complains of the following: that the court permitted the State, upon cross-examination of T. B. Moody, a material witness for the defense, to prove that Moody had been indicted for various and sundry offenses and felonies, extending over a period of twenty years. As stated, proof of this character should have been limited (to prosecutions of recent date) and after permitting the State by its attorney to impeach said witness, appellant offered and would have proved by witness Mayberry, that he met Moody, immediately after the killing of Will Wade, within a few yards of the place of the killing, and said Moody stated to Mayberry that he was an eye-witness to the killing, and that he had seen a man killed in Wood's saloon (indicating the place) and the man who did the killing did it in self-defense. The bill also shows that in addition to proving sundry offenses against Moody, in order to impeach him, that the county attorney produced the stenographic report, wherein Moody, on a previous habeas corpus trial had sworn to a different statement about the killing to what he swore on this trial. Therefore, it became pertinent for the defense to prove by witness Mayberry, that Moody had made a similar statement immediately after the killing, to the one he made upon the trial. Hudson v. State, 90 S. W. Rep., 177; Sanders v. State, 31 Texas Crim. Rep., 529; Riojas v. State, 36 Texas Crim. Rep., 186; White v. State, 62 S. W. Rep., 576.

The evidence discloses that the State's theory of this case was that appellant became angry on account of a difficulty with deceased by George Madden; that appellant then formed the intent to kill deceased, went to the wagon yard, got his gun and entered the back door of deceased's saloon; not finding him, appellant, in company with Henry Madden and his son, Ry Casey, went to two other saloons, returned to deceased's saloon, and there appellant shot and killed deceased, in pursuance of a previously formed design. Appellant disputed this by his testimony, and showed that he went to the wagon-yard to get the gun, with which the homicide was committed, for the purpose of placing it out of the reach of George Madden, whom he feared would get the gun and kill deceased; and that the entrance into the rear door of deceased's saloon was accidental, and without

knowing whose place it was; and that instead of hunting deceased, appellant was hunting or looking for George Madden; that he came back to deceased's saloon looking for him; that deceased threw his pistol down on Henry Madden, who informed deceased he was not armed.  Thereupon deceased said he would kill appellant and snapped the pistol at appellant, and appellant grabbed the gun out of his son's hand, and killed deceased.  The record does not show that appellant and deceased were acquainted.  The court erred in not charging on manslaughter.  If the intent to kill was formed by appellant in a sudden transport of passion aroused by an unprovoked assault by deceased on his friend George Madden, and such intent was carried into execution before sufficient time elapsed for the mind to become cool, calm and sedate, or if the defendant's mind was rendered incapable of cool reflection by said conduct on the part of the deceased, and under such circumstances he shot and killed appellant, he might not be guilty of any higher offense than manslaughter.

Appellant complains of the court's charge on provoking the difficulty  The evidence suggested the issue, but the court, in substance, merely told the jury if appellant provoked the difficulty with an apparent intention of killing, then he would be guilty of murder in the first or second degree, according to the other facts in the case.  Appellant complains that the court erred in failing to go further and tell the jury that if appellant provoked the difficulty, without such apparent intention of killing, then he would not be guilty of any higher grade of offense than manslaughter.  This is the law.  For charges on this question and discussion of the matter, see Young v. State, 41 Texas Crim. Rep., 442; Matthews v. State, 42 Texas Crim. Rep., 31; Airhart v. State, 40 Texas Crim. Rep., 470.

There are various other questions raised, but they are not likely to arise upon another trial.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*