### WILEY SMITH v. THE STATE.

No. 795.    *Decided November 16, 1910.*

**1.—Rape—Evidence—Impeachment—Stenographer's Notes.**

Where, upon trial of rape, the defendant sought to impeach the testimony of prosecutrix and another State's witness by offering the transcript of the notes of the sworn court stenographer, who testified that he correctly took down the testimony at another trial, and that from the notes taken from said State's witness' testimony he had made a correct transcript immediately after the original notes were taken, it was reversible error not to admit such transcript in evidence, for the purpose of impeaching said State's witnesses on material points of their testimony on the trial. Following Stringfellow v. State, 42 Texas Crim. Rep., 588, and other cases.

**2.—Same—Court Stenographer—Officer of the Court.**

Where a person has been appointed by the district judge as official stenographer of the court he is a sworn officer of the court and a part of the machinery of the administration of justice, and if the transcript of his notes taken at a former trial of the case is correct it may be introduced in evidence where such notes are not obtainable, and it is not necessary that the stenographer should testify from his memory.

**3.—Same—Evidence—Conduct of Prosecutrix.**

Where, upon trial of rape, it was proper for the State to show that the prosecutrix resided with her grandmother on account of the death of her parents, as accounting for her residence away from home, it was improper to permit the State to go into details touching these matters.

Appeal from the District Court of Anderson. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Kemley & Minton* and *J. F. Weeks* and *King & Morris,* for appellant.—On the question of rejecting the transcript of the stenographer's notes: Stringfellow v. State, 42 Texas Crim. Rep., 588, 61 S. W. Rep., 719, and cases stated in opinion,

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—This is the second appeal of this case. The opinion on the former appeal will be found in 56 Texas Crim. Rep., 316, where a full statement of the facts is given. The facts on the trial from which this appeal resulted were in a general way the same. It is unnecessary to make any special reference to them further than to illustrate the matter herein decided. On the trial from which this appeal results appellant was again found guilty of the charge of rape and his punishment assessed at confinement in the penitentiary for a period of sixty years.

On cross-examination of the prosecuting witness, Mamie Edgley, predicates were laid looking to her impeachment in respect to many matters of importance. These we need not set out at length. Among the most material matters upon which she was sought to have been impeached was in this wise: On the trial from which this appeal results she testified in substance that on the night of the assault she told her aunt, Mrs. Winnie Davis, all the details of same. It was sought to be shown that on a former trial she had testified that she had in a general way told her aunt on the night of the assault, but had not told her the details of same until the next morning. All the matters of impeachment were matters of such character and of such gravity as would, if the jury believed the impeaching witness, have seriously called in question either her truthfulness or her recollection of the events which she was undertaking to narrate. For the purpose of impeaching the prosecutrix and Mrs. Davis appellant called one Paul Cawthorn, who testified at the time of the trial that he was living at Huntsville and engaged in the banking business, but that during the year 1908 he was court reporter for the 12th Judicial District, comprising the counties of Leon, Walker, Grimes, Montgomery and Trinity, and that on the trial of the case in Leon County against appellant he had taken down, as such stenographer, the testimony of Miss Mamie Edgley, and that from the notes taken he had made a transcript of her testimony; that her testimony was correctly taken down and correctly transcribed, and that the carbon copy exhibited to him was a correct statement of her testimony. He also says that the transcript so made was made immediately after his original notes were taken. Among other matters he testified as follows: "Mr. Cawthorn, after seeing this statement of facts and reading over part of it, do you as an absolute fact know it is correct? A. Yes, sir. I know that it is correct for the reasons I have stated to you, Judge Morris. Q. Now, do you remember independently of this record that she said that? A. No, sir; not at all. Q. But from this record here of this document, which is what you transcribed as her evidence, do you know absolutely that it is correct? A. Yes, sir; that is what makes me say it is correct." And, again, he makes in this connection the following statement: "I don't remember any-

thing independent of this statement. I have no independent recollection that she said anything, and I would not attempt to testify from my recollection; but I know that it is correct because my signature and certificate shows that I made it so, and because I correctly transcribed this testimony of the witness and it is in this record." In respect to one of the statements offered in impeachment the following inquiries and answers were made: "Q. Mr. Cawthorn, do you swear that the witness said, 'You are the smallest made girl I ever saw, and you need not be uneasy, you will never be caught up with.' And I said, 'Do you reckon not?' A. I don't know from recollection. If it is embraced in quotation marks, I swear it is correct. Q. And in these quotations do you put down the exact language of the witness? A. Yes, sir. Q. And when you do that you use the exact language? A. Yes, sir. Q. Did you put her reply as follows: 'Do you reckon not?' A. Yes, sir, that is her exact language. Q. That was written on your note books? A. Yes, sir. Q. Note books are lost? A. Yes, sir." The examination of this witness, while very lengthy, disclosed this condition in substance that he had correctly taken down and correctly transcribed the testimony of the prosecuting witness, and that the copy submitted to him and from which it was sought to have him read, embraced with literal correctness the testimony of the witness giving, in respect to some of the matters inquired about, her exact language. This effort on the part of the appellant to impeach the witness was objected to because the transcript was not the original transcript of the evidence as taken down by the witness, that is, was not his shorthand notes and, second, because the witness himself had not sufficiently qualified as to the correctness of the transcript as to make it admissible in evidence, and, third, that the transcript was but a conclusion of the witness as to what the testimony was; that it was in narrative form and just a narrative statement of the facts, was hearsay, immaterial and insufficient and not the original testimony of the party, that is, not the original questions to and answers of the witness. These objections were by the court sustained and the proffered testimony excluded. This action of the court did not rest, nor was same placed upon the ground that the testimony was not material and important, but on the ground as we gather, that since the witness had no personal recollection of what Miss Edgley said, and since his memory, after referring to his notes, was not refreshed by this memoranda, that the testimony itself so taken by him, his copy of the transcript of same, was not properly receivable in evidence. Under the law, as it was aforetime in respect to mere memoranda of private parties, there is much support in the authorities found, in line with the court's decision, but we think under the authorities of this State, and having reference to the character of the witness, the nature of his duties and his whole manner, that the action of the trial court can not be sustained. Nor does this seem to be an open question in this State

under the authorities. The question came perhaps more directly before this court first in the case of Stringfellow v. State, 42 Texas Crim. Rep., 588. In that case Judge Davidson, speaking for the court, uses this language: "The judgment should be reversed because the witness Pickel was not permitted to testify, as shown by bill of exceptions. On a former trial Pickel took down the testimony as a sworn stenographer. On the trial, which resulted in this conviction, several of the witnesses materially changed their testimony. In order to contradict them the predicate was laid as to their former testimony. Pickel was introduced for the purpose of impeachment. Being questioned with regard to the testimony of said witnesses, he was unable to reproduce their testimony from memory. He was permitted to refresh his memory from his stenographic notes, and stated that in taking down the testimony he did not charge his memory with it, his sole object and purpose being to get it correctly in his notes; that his mind was directed to that matter and not to recollecting what the testimony was; and could not, therefore, after reading the notes, be sufficiently definite in his recollection to reproduce said testimony. He testified, however, that he took the testimony correctly, and these notes showed exactly what the witness did testify, and to this he would swear. In other words, he was willing to swear and would have sworn, if permitted, that the testimony taken by him was correctly taken and exactly what the witnesses stated. Under this predicate appellant proposed to introduce the stenographic notes in contradiction of said witnesses. This being refused, appellant excepted. While the question is not so presented perhaps as to require a reversal upon the proposition, for want of a sufficient bill, still the question is before us, and as the case will be reversed upon other grounds, we deem it not improper to call the trial court's attention to the matter. As presented, this evidence should have been admitted. Kimbrough's case, 28 Texas Crim. App., 367; Jones on Evidence, for collation of authorities." This case was followed and approved in the later case of Smith v. State, 44 Texas Crim. Rep., 137, 73 S. W., 401. The Stringfellow case, 42 Texas Crim. Rep., 588, was also in terms approved in the case of Casey v. State, 50 Texas Crim. Rep., 392. In that case it is apparent from the record that the offered testimony was excluded on the ground that the stenographer was not able from any independent recollection to testify to the evidence sought to be admitted. Nevertheless, in passing on the matter Judge Brooks, who wrote the opinion of the court, said: "Appellant also complains because the court permitted the stenographer to read from his stenographic notes, taken at the habeas corpus trial, and not from any independent recollection of what the defendant's witness, J. L. Hewitt, testified on said habeas corpus trial. The stenographer swore to the accuracy of his notes, and from that read certain excerpts which were introduced by the State for the purpose, and properly so, of impeaching the witness Hewitt. This was correct.

See Stringfellow v. State, 42 Texas Crim. Rep., 588." In the still
later case of Cornelius v. State, 54 Texas Crim. Rep., 173, the same
identical question came before the court. It will be noted, too, that
the testimony of the stenographer there followed almost literally the
testimony of Mr. Cawthorn here, and Judge Brooks' treatment of
the matter is so clear and conclusive that we repeat all the opinion
touching that matter. He uses this language: "Bill of exceptions
No. 4 shows that the State placed A. M. Works, Jr., the official ste-
nographer of said court, upon the stand, and after proving by him
that he had reported the two former trials of this cause in the Dis-
trict Court of Potter County, and after proving by said witness that
he had transcribed the notes of the defendant's testimony given at
the first of said trials, and after testifying that such transcription
was a correct statement of the testimony of said witness Cornelius,
thereupon the witness was permitted to state various things that the
defendant testified on a former trial, to all of which appellant objected
on the ground that it was not shown that the paper from which the
witness was reading had ever been signed by the defendant as a
signed statement; that no testimony whatever was offered to show
that the defendant had admitted to any person that such question
and answer had been asked him and answered by him as stated in
said document; and that it was not shown that he had at any time
admitted the correctness of said question or answer. The bill is
approved with this explanation: 'This witness testified on his voir
dire examination that he was a competent and experienced stenogra-
pher; that he had been the official court reporter for this judicial
district for the last two years and was still occupying said position;
that he was present and acting as official stenographer and reporter
for the district at a former trial of this cause in Amarillo, and heard
the defendant testify in his own behalf at said trial; that witness
took stenographic notes of the testimony of defendant at said trial, and
that he knew he had taken the testimony correctly; that he transcribed
his notes of said defendant's testimony correctly and knew that it was
a correct statement of defendant's evidence, but as to some of the testi-
mony shown in the bill he had no independent recollection of it." There
was no error in admitting the stenographer's notes to be introduced as
above pointed out. This question has been decided by this court ad-
versely to appellant's contention. See Casey v. State, 50 Texas Crim.
Rep., 392, 17 Texas Ct. Rep., 169, and Stringfellow v. State, 42 Texas
Crim. Rep., 588." The same view seems to have been taken of the
matter by our civil courts. In Cooper v. Ford, 69 S. W., 487, our
Court of Civil Appeals, in passing on almost this identical question,
said: "At the time of the trial Dart was dead. He had testified on
a former trial, and the plaintiff reproduced his testimony. This was
done by producing a transcript of his testimony given at the first
trial. The transcript was verified by a stenographer who testified that
the same was made by him, and was a faithful copy, in substance, of

stenographic notes taken by him of the testimony of the witness; that the notes were taken at the time the testimony was given; and that he knew the notes to be correct. The stenographer did not know, independent of the facts stated, that the transcript was a correct copy of the testimony of the witness, but did know that the notes were full and correct, and had been truly copied. The transcript was then permitted to be read in evidence over the objections of appellants. We find no error in this action of the court. If the stenographer could have testified that he remembered the substance of the evidence of the witness, he would have been permitted to testify to his recollection thereof. The testimony of the deceased witness was taken by the stenographer literally as it was given, and was, beyond question, much more likely to be correct than the recollection of any witness. The notes of the stenographer was unintelligible to the uninitiated, and it was therefore necessary to use the transcript thereof made by him." This opinion is in answer to the contention that the original notes should have been produced. These authorities, we think, not only sustain appellant's contention that this testimony was admissible, but indeed compel a concurrence in the proposition urged by him. We think, however, in reason that this view is correct from another point of view. Mr. Cawthorn was not a mere private party; he was an attache of the court, appointed by the district judge, a sworn officer of the court and a part of the machinery for the administration of justice. It has now, for many years, been provided in this State that the testimony on all trials should be taken by the official stenographer whose appointment is authorized and regulated by law. The matter of preparation of a statement of facts in important cases in the District Court, either by counsel or private parties, is as obsolete in this State as slavery or witch-burning, and in view of the provisions made by law, the notes of the stenographer, taken in the course of a judicial proceeding, while not importing the same verity as testimony taken on an examining trial, yet are much more to be relied on than the recollection of a witness whose memory is always uncertain and whose testimony may frequently be the result of partisanship and bias, and as said in the Stringfellow case, supra, the fact that the witness may not, independent of his notes, recollect, the testimony should be and there is no reason why this evidence should be rejected. It is intended, of course, that his notes should be a faithful transcript of the testimony given on the trial. Being thus intent in securing this testimony, it is but natural that, absorbed as he is, in the mechanical task of committing to paper an exact reproduction of the testimony given by the witness, he would not charge his memory with the testimony so given, but would more and more come to depend upon his notes taken at the time.

2. On the trial the State was permitted to prove that the mother of appellant died when she was about two years old, and that her father died a short time after this, and that she had, for the most

part of her life, lived with her grandmother and during some of the time resided with her aunt, who testified on the trial. This was objected to by the appellant as being immaterial and as tending to prejudice the rights of appellant, and, in view of the arguments of the district attorney, preserved in the record, we can readily understand how and why the introduction of these details might have had an injurious result. It was no doubt offered by the State in view of the cross-examination of Miss Edgley to account for her residing with these relatives, and, we think, the State should be permitted under the facts to show the death of her father and mother as accounting for her residence away from the home where ordinarily she would be expected to reside, but we can see no good purpose to be subserved by going into detail touching these matters. We are not prepared to say we would reverse the case on account of the admission of this testimony, but on another trial we think this evidence should be limited within the scope here outlined.

The other grounds urged as grounds for reversal are such as for the most part will not occur again, and need not, we think, be here considered.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

McCord, Judge, not sitting.