Francisco Serna v. The State.

No. 11420.   Delivered April 25, 1928.
Rehearing denied June 20, 1928.

The opinion states the case.

*A. B. Crane* of Raymondville, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant was convicted for the murder of Hilario Moreno and his punishment assessed at confinement in the penitentiary for fifty years.

The killing occurred at a dance given by one Jesus Serna. From the state's evidence it is made to appear that the killing was inexcusable and that it came about under the following circumstances. The custom seems to have been at dances such as given on the night in question for the men dancers to pay the party at whose house the dance was given ten cents for each dance and to his female partner five cents. Jesus Serna testified that deceased had in advance settled with him for the dances which he expected to engage in during the evening and that he advised appellant who was collecting for Jesus Serna of this fact and told him to collect from deceased only the five cents for his dancing partner. Some time during the evening a controversy came up between appellant and deceased, the former claiming that deceased owed him forty cents; deceased denied this, stating that he had settled or would settle with Jesus, whereupon appellant knocked deceased down and as he was arising from the ground appellant drew his pistol and fired at deceased who then turned and ran and was shot in the back by appellant while he was retreating. This in substance is the state's evidence, with the added proof that appellant was drunk at the time of the killing.

Appellant, through his own testimony and that of his witnesses, denied that he was intoxicated and presented his defense as follows: That deceased had been engaged in an effort during the progress of the dance to pick a fight with appellant and had tried to induce him to leave the circle of light; had cursed him and threatened to kill him and had said that he (appellant) would be killed as was his father; that when he undertook to collect from deceased for the dances he declined to pay, said he would settle with Jesus and struck appellant on the back of the head; that when deceased struck at him again appellant grappled with him; that deceased drew a pistol which appellant grabbed, and in the scuffle over the pistol several shots were fired; that the gun was discharged accidentally during this scuffle; that appellant believed if he did not take the pistol away from deceased he would be shot with it.

Before discussing any questions of law we take note of the fact that many bills of exception found in the record bear the qualification of the trial judge. Immediately following the trial judge's signature authenticating the bills, together with his qualification thereto, there appears a notation over the signature of appellant's attorney stating that the court's qualifications to the bills were objected to. Such objection is not in any way authenticated by the trial judge. We have held that objection to the qualification placed upon a bill by

the trial judge can not be brought forward as here attempted. The objection to the qualification must be authenticated by the trial judge, either over his signature in connection with the bill itself, or by a separate bill. Nicholson v. State, 298 S. W. 436. As presented in the record the qualifications become part of the bills and must be considered in connection therewith.

Bills of exception 12, 13, 14, 15, 16, 31 and 33 all relate to objections urged by appellant to the reproduction by the state of the testimony of Raymond Teller, who was sheriff at the time of the homicide. It is impracticable to discuss these bills separately; as they relate to the same subject they will be considered together. One objection urged to the receipt of this evidence was that it was in violation of Section 10 of the State Constitution, which guarantees that accused shall be "confronted with the witnesses against him." We think it profitless to reopen a discussion of the question raised by this objection. The effect of it is to ask this court to return to the doctrine announced in Cline v. State, 36 Tex. Cr. R. 320, 36 S. W. 1099, and Kemper v. State, 63 Tex. Cr. R. 1, 138 S. W. 1025. From the beginning of Texas jurisprudence up to the time of the opinion in Cline's case it had been the holding of the court that under proper circumstances evidence of a witness could be reproduced. The holding to the contrary in Cline's case was overruled in Porch v. State, 51 Tex. Cr. R. 8, 99 S. W. 1122, whereby return was had to the doctrine which had obtained originally. Thereafter Porch's case on the point involved was overruled in Kemper's case, which in turn was overruled by Robertson v. State, 63 Tex. Cr. R. 216, 142 S. W. 533, thereby effecting once again a return to the original doctrine announced in the early days of the Texas courts. One so desiring will find it interesting to review the cases mentioned, but this court has consistently followed Robertson's case and we see no reason now to depart therefrom. (Many cases are collated under Art. 750, Vernon's C. C. P., Vol. 2.)

From the various bills of exception mentioned it is shown that an examining trial of appellant was had at which Teller was used as a witness by the state. Upon that trial he was sworn by the magistrate and appellant not only had the privilege of cross examining him but availed himself of it through his attorney. At the examining trial Mrs. Wiggins, who is shown to have been a competent stenographer, took shorthand notes of the questions asked and the answers given by the witness, including Teller, which shorthand notes she later transcribed. However, the testimony given on the examining trial

was not signed by the witnesses nor certified by the magistrate. Before the present trial Teller had been convicted in the Federal Court of some offense and at the time of the trial was shown to be in the Federal penitentiary in the state of Kansas. Upon the present trial the state placed Mrs. Wiggins upon the stand and proved by her that she had correctly taken shorthand notes of the evidence given by Teller at the examining trial, had correctly transcribed them and then had with her such transcription. Over many objections interposed by appellant she was permitted to read to the jury the evidence so given by Teller in the examining trial. Relating to the method of preserving the testimony given upon the examining trial, Art. 253, C. C. P. reads:

"The testimony of each witness shall be reduced to writing by or under the direction of the magistrate, and shall then be read over to the witness, or he may read it over himself. Such corrections shall be made in the same as the witness may direct; and he shall then sign the same by affixing thereto his name or mark. All the testimony thus taken shall be certified to by the magistrate."

Art. 750 reads as follows:

"The deposition of a witness taken before an examining court or a jury of inquest, and reduced to writing, and certified according to law, in cases where the defendant was present when such testimony was taken, and had the privilege afforded him of cross-examining the witness, may be read in evidence as is provided in the preceding article for the reading in evidence of depositions."

Among other objections urged to the reproduction of Teller's evidence was that it had not been signed by the witness and was not certified by the magistrate as required by the articles quoted. The evidence given by the witness at the examining trial could not have been received under Arts. 253 and 750 (supra) because the formalities therein required had not been complied with. Unless we misapprehend the bills it was not offered by the state under said articles. As we understand the statutes in question and the decisions thereunder, if the evidence of the witness had been reduced to writing, signed by the witness and certified by the magistrate, a showing that these formalities had been complied with would authenticate the evidence in such way as would permit its introduction upon laying the predicate that the witness had died or resided beyond the limits of the state. Where the evidence taken at the examining trial would not be admissible under the named statutes because of irregularities it has been held that such evidence may be reproduced by oral proof.

Dunlap v. State, 9 Tex. Cr. R. 179; Potts v. State, 26 Tex. Cr. R. 663; Stevens v. State, 38 Tex. Cr. R. 167; Young v. State, 82 Tex. Cr. R. 257, 197 S. W. 479. Evans v. State, 12 Tex. Cr. R. 370, does not present a contrary holding. It only announces the very correct rule that whether the testimony is to be reproduced under the statute or by oral evidence the same predicate is required to be shown, that is, that the witness was dead or resided out of the state. Young's case (supra) is very similar to that found in the present record. In that case the assistant county attorney had taken down in writing the absent witness's testimony but it had not been signed by the witness nor certified by the magistrate, hence was not admissible under the statute. The assistant county attorney testified that he had taken the evidence correctly, but that to give the details he would have to read the written statement and was then permitted to read from the writing in his possession. We find difficulty in drawing a distinction between what happened in that case and the one now under consideration. There would be little logic in holding that a witness who had heard Teller testify at the examining trial could reproduce his evidence by an oral statement of its substance, depending upon memory alone, yet exclude the reproduction where a witness under oath said she had correctly taken the testimony in shorthand, had correctly transcribed it and that the instrument from which she read was the exact testimony given. In principle the case is not unlike Gandy v. State, 97 Tex. Cr. R. 334, 261 S. W. 145, where the jury had disagreed as to the evidence given by a certain witness. Art. 678, C. C. P., (formerly Art. 755) reads as follows:

"If the jury disagree as to the statement of any witness they may, upon applying to the court, have such witness recalled, and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, and as nearly as he can in the language he used on the trial."

In Gandy's case the witness had been excused after testifying and therefore could not be recalled to restate his testimony. Over appellant's objection the court directed the court reporter to read his shorthand notes of the witness's testimony both on direct and cross examination upon the point regarding which the jury was in disagreement. In reviewing the matter this court said:

" * * * article 755, providing for the reproduction of the testimony of a witness by letting him repeat his former testimony, was enacted before the use of stenographers became general, and before the court stenographer became an officer of the court. It is believed

that the procedure followed was in substantial accord with article 755, C. C. P., (supra). If, however, the procedure followed was not within the purview of the statute mentioned, it was within the inherent power of the court to have the court reporter read, in the presence of the court, the appellant, and his counsel, the official record of the testimony in question. Moreover, there is no claim that in the stenographer's reproduction of the testimony there was any inaccuracy or departure from the testimony of the witness given upon the stand, and which he would have given, had he been called. Under the circumstances there is an absence of injury, and a reversal should not result from the action taken."

Where shorthand notes have been taken by a stenographer, transcribed by him and he under oath states that the evidence was correctly taken and transcribed, the testimony so taken may in a proper case be read in evidence although the stenographer has no present or independent recollection of the evidence as originally given. Corpus Juris, Vol. 22, Sections 527, 530. The rule has been applied in our own court where accused's evidence on a former trial was proven against him on a subsequent trial. (Barber v. State, 64 Tex. Cr. R. 96, 142 S. W. 577; Cornelius v. State, 54 Tex. Cr. R. 173, 112 S. W. 1050; Morawitz v. State, 49 Tex. Cr. R. 366, 91 S. W. 227; Smith v. State, 73 S. W. 401;) also where the former evidence was introduced for impeachment purposes (Smith v. State, 60 Tex. Cr. R. 293, 131 S. W. 1081; Casey v. State, 50 Tex. Cr. R. 392, 91 S. W. 496;) likewise where a witness's evidence on a former trial was reproduced in a subsequent trial by the stenographer who took his testimony. (Arnwine v. State, 54 Tex. Cr. R. 213, 114 S. W. 796; Roquemore v. State, 59 Tex. Cr. R. 508, 129 S. W. 1120; Pace v. State, 69 Tex. Cr. R. 27, 153 S. W. 132.) We see no reason why the same rule should not apply where the state or the accused is undertaking to reproduce the testimony of a witness taken upon an examining trial where the formalities of the statute were not complied with and therefore the evidence could not be reproduced under Art. 750 C. C. P.

Another objection urged to the reproduction of Teller's evidence was that his absence from the state was only temporary. We glean from the record that Teller's punishment had been assessed at confinement in the Federal penitentiary for one year and six months; that he was at the time of the trial in the Federal penitentiary in the State of Kansas, had been there some five or six months and had about a year more to serve before the expiration of his sentence.

His family lived in the county where the trial was had and it may be assumed that Teller intended to return to Texas when released from prison. Appellant cites Wharton v. State, 69 Tex. Cr. R. 1, 152 S. W. 1082; Post v. State, 10 Tex. Cr. R. 579; Peddy v. State, 21 S. W. 542; Anderson v. State, 170 S. W. 142; Modella v. State, 85 Tex. Cr. R. 291, 211 S. W. 944; Brent v. State, 89 Tex. Cr. R. 546, 232 S. W. 845, as supporting his proposition that before former evidence of a witness who is out of the state may be reproduced it is necessary that the predicate show his absence from the state to be "permanent." Art. 749, C. C. P. provides in substance that before the evidence of an absent witness may be used it must be shown that he has "removed beyond the limits of the state." Corpus Juris, Vol. 22, Sec. 519, states the rule which obtains in this state as follows: "Some authorities consider that the absence of the witness must have a character of permanency, and a mere transient absence will not suffice, * * * " We think where our decisions use the word "permanent" removal or absence it must be construed as the antithesis of "temporary" or "transient." Such we understand to be the announcement in Brent's case (supra). If a witness should accept employment in another state for a definite term of two years with the purpose of returning at the end of the two years we think his absence would have a character of "permanency" about it. So in the present case the removal of Teller, while involuntary on his part, had a very decided character of permanency for the duration of his absence. He could not return however much he might desire to do so, and the fact that he intended to return to Texas when his sentence expired would in our opinion be no bar to the reproduction of his evidence.

In bill of exception number sixteen appellant complains that in the reproduced evidence of the witness Teller he was permitted to testify that deceased was shot in the back and that the bullet came out about an inch under the right nipple. The objection urged was that witness was not shown to be qualified to give such testimony. The objection mentioned appears in the bill as ground of objection only. There is an absence of any certificate of fact that the witness was not qualified and no facts are stated in the bill from which incompetency of the witness to speak upon the subject appears. The bill is insufficient to present the objection urged. (See cases collated under Sec. 209, Branch's Ann. Tex. P. C., and Note 40, Art. 667, Vernon's C. C. P., Vol. 2.) However we note that con-

sidering the testimony of the witness Teller as a whole there seems to be no basis for the objection.

Bill of exception number 22 brings forward complaint that the court refused to permit appellant to answer a question propounded to him by his attorney while being examined as a witness in his own behalf. The bill fails to advise us what answer was expected. Of course, in such condition the bill presents no matter for review.

Bill of exception 24 reflects the fact that after the trial had commenced appellant decided to file a request for suspended sentence; that affidavit for such purpose was prepared and filed, and complaint is lodged because the court would not permit the application to be read to the jury, nor submit the issue. We are not advised by the bill at what point in the trial the affidavit for suspended sentence was prepared, nor of any reason why it was not filed before the beginning of the trial as required by Art. 776, C. C. P. (See Trevino v. State, 93 Tex. Cr. R. 439, 247 S. W. 872, and cases therein cited.) Nothing appears in the bill which leads to the conclusion that the trial judge abused his discretion in declining consideration of the plea under the circumstances.

Appellant complains because he was not permitted to prove (bills 18 and 30) that his father had been at enmity with the Cavazos family for years, had killed one Juan Cavazos, for which the father had been tried and convicted; that while appeal was pending from such conviction appellant's father had been assassinated and that no one had ever been arrested for such killing and that both appellant and his brother had been threatened with assassination. From a qualification to one of these bills it appears that it did develop during the trial that appellant's father had been assassinated and that the assassin had never been apprehended. We fail to see the relevancy of the evidence rejected. Moreno, the party killed by appellant, is not shown to have been related to or associated with any of the Cavazos family.

Bills of exception 10, 19, 21, 25, 26, 27, 28, 29 and 30 have been examined together with the qualifications of the court attached to some of them. In our opinion none of them presents error, nor calls for an extended discussion.

We have carefully examined the charge given, the objections thereto and the special charges which were requested and refused. The objections to the charge are not tenable. The special charges pertinent under the evidence seem to have been fully covered in the

main charge which is admirable and appears to have protected appellant's rights in all particulars.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Serious complaint is made of the fact that we listed various bills of exception as having been considered but not deemed of merit and therefore not discussed. We have again gone over each of same and are of opinion that we were correct. It would be of little aid to the profession for us to say, what has been often said, viz: that the district court has no power to compel witnesses in a criminal case, before taking the stand, to tell the attorneys what they are going to testify to. This is the complaint in bill of exceptions No. 10 so listed. Bill No. 19 shows that the court rejected evidence of defense witness Salinas to the fact that appellant asked witness if he heard deceased cursing, but did not know who he was cursing, and to the answer of the witness that he guessed he was cursing Pancho. Bill No. 21 complains of the rejection of the opinion of a witness in substance that from the movements of a group of men it appeared to him they wanted to get appellant out where they could have him shot. Bill No. 25 complains because a witness who saw appellant about an hour after his arrest, was allowed to testify that appellant was drunk. Bills Nos. 27 and 28 were in legal effect the same as bill No. 25. Bill No. 29 complains that by two witnesses the State was allowed to prove that defense witness Costly said,—out of the presence of appellant and after Costly came back to the scene of the shooting,— "Where is the s—n of a—b—h that went to get the officers?" Bill No. 30 complains of the overruling of the motion for new trial. We deem it unnecessary to analyze or further discuss any of these bills of exception. None of them present error.

It would seem plain that a statement made by appellant's attorney, that he had excepted,—to this, that or the other ruling of the trial court,—could have no force, effect or standing before this court, as an exception, unless the fact that such exception was so taken, showed to have been approved by the court below. This is true of all exceptions to the qualification to appellant's bills in this case.

No error appearing, the motion for rehearing is overruled.

*Overruled.*