## A. HALBERT v. THE STATE.

No. 14997. Delivered March 23, 1932.
Rehearing Denied June 15, 1932.
Reported in 51 S. W. (2d) 321.

The opinion states the case.

*Minton & Minton,* of Hemphill, for appellant.

*Bogard & Anderson,* of San Augustine, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, twenty years in the penitentiary.

There is no question but that appellant struck deceased with a large knife inflicting a wound from which death resulted in a few minutes. The state's theory was that the killing was unprovoked and upon malice; the theory of appellant was self-defense against an attack by deceased following a declaration of the latter that he would beat hell out of appellant. There is no dispute of the fact that just before the homicide there was a heated discussion in progress between Ran Russell, brother of deceased, and Pole Halbert, father of appellant,—over some mules which Pole Halbert had left on a farm sold by him to Ran Russell, the latter claiming Halbert had no right to leave the mules there,—and which mules had that morning been sent by a negro to Pole Halbert, who met the negro on the road, turned him back, and told him to take the mules back to the farm.

Appellant sought a second continuance for two absent witnesses, H. M. Smith and Abb Alford. Alford was alleged to be "temporarily" in Wilmington, Delaware, according to appellant's information. Such application to be sufficient as to Alford should show when he left Texas, when appellant became aware of this, and facts should be averred showing that proper diligence could not have secured the deposition of such witness in time for this trial. As to Smith, this case seems to have been continued once because of his absence. The indictment herein was returned May 2, 1930, and as far as we can find out from the record, the first application for process for Smith was made on March 2, 1931. This process was never returned. Manifestly this was not a sufficient showing of diligence. McKee v. State, 93 Texas Crim. Rep., 217, 246 S. W., 1035. The trial court was well within his discretion in refusing the application.

Our statute, article 1257a, Vernon's Ann. P. C., makes admissible all relevant facts and circumstances surrounding the killing, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide. The instant killing grew out of and was coincident with a quarrel between the father of appellant and the brother of deceased over certain mules, the immediate antecedent being that Ran Russell had that morning sent said mules from his farm and toward the home of appellant's father in charge of a negro, who was met by appellant and his father on said road, and the latter, in the presence of hearing of appellant, ordered the negro to take the mules back to Ran Russell's farm. This incident was the subject of

the discussion causing the remarks attributed to deceased and replied to by appellant just before the fatal blow. Complaint of testimony elicited from appellant on cross-examination as to the meeting between himself and his father on the one hand, and the negro on the other, and what was then said,—as appears in bills of exception 2 and 5,—is of no avail as the testimony seems to be easily comprehended by the provisions of the statute above referred to, hence material and admissible. So also of testimony of the occurrnce about .which appellant was asked on cross-examination, and Dalton Smith testified,—as set out in bills of exception 3 and 7, concerning a statement made by appellant on Sunday before the killing on Saturday following,—in substance that the difference between appellant's father and Ran Russell over said mules was then being discussed, and that appellant, holding up a knife, said "This will put a stop to the fuss." Smith in his testimony said he could not tell the kind of knife appellant held up, but it was a large one. We think the identity of the knife so exhibited by appellant, with that used by him in doing the cutting, immaterial. The facts indisputable show that a fuss about the mules in question was in progress when appellant stabbed deceased with a large knife. No pretense is made that any other cause led to the killing. What was in appellant's mind at the time he cut deceased was most material. Appellant says it was self-defense. The state says it was malice, which is a heart fatally bent on mischief, which condition relates back to or is inferred from words spoken or acts done. In our opinion the statement and act of appellant on Sunday before related to the very subject-matter which appears to have caused this killing, and was close to it in point of time, and unquestionably shed light on the condition of appellant's mind, and was properly admitted.

Appellant swore that he ran away from the scene of the cutting; that his father caught up with him, and they went on together. Mr. Reynolds, for the state, testified, and, referring to appellant, said:

"I saw him on the afternoon on the killing of Roy Russell· in Hemphill. I first saw him running up the road with his father. That was about two blocks East on the road to Milam. Both were running and my truck was standing still when I saw them. I asked what was the matter, and he said to let them get in the truck and he would tell me.

Q. "What did Pole Halbert say when you asked what the trouble was? A. He said that he thought Arlis had killed Roy Russell down in town. I asked what the trouble was, and Pole Halbert said: 'Not a God damn thing.' * * * Arlis Halbert only told me the street that would take him to his home."

Appellant objected to the introduction of the statement of Pole Halbert on the ground that it was hearsay and an opinion. The testimony of Mr. Reynolds, considered in connection with other facts in the record, makes the statement of Pole Halbert clearly res gestae. His state-

ment could have been made only a few minutes after the cutting, not more than long enough for appellant and his father to run two blocks. Mr. Reynolds was testifying in the court house of Newton county, at whose door the cutting occurred, and he spoke of the place where he saw the parties running as "About two blocks east, on the road to Milam." The truck of witness was standing. The two men got in. The conversation then occurred. Mr. Reynolds took appellant and his father to their home in his truck. As supporting our conclusion that the statements were res gestae see Cartwright v. State, 16 Texas App., 473, 49 Am. Rep., 826; Craig v. State, 30 Texas Crim. Rep., 619, 18 S. W., 297; Lewis v. State, 29 Texas App., 201, 15 S. W., 642, 25 Am. St. Rep., 720; Nami v. State, 97 Texas Crim. Rep., 522, 263 S. W., 595.

The question further arises as to he admissibility of the statements because of their being made by appelant's father. In many cases to be found in the books, the declarations of third parties are held admissible. The rule seems to favor such admission when it is made to appear that the declaration of the third person was one properly calling for a response from the accused. Loggins v. State, 8 Texas App., 444; Felder v. State, 23 Texas App., 477, 5 S. W., 145, 59 Am. Rep., 777; Browning v. State, 26 Texas App., 444, 9 S. W., 770. Provided, however, the facts be such as to make reasonably sure that the statement of such third person was heard by the accused, and, as said by Judge Hurt in the Felder case, supra, the burden of showing that the statement was heard by the accused will be upon the state, but often this can only be shown by circumstances such as contiguity and other opportunities for hearing. Holden v. State, 18 Texas App., 106, says: "He was close enough to have heard what was said and he said nothing." In LaGrone v. State, 61 Texas Crim. Rep., 173, 135 S. W., 121, 122, the predicate was "He was close enough to have heard it, if he was listening. He was in about fifteen feet of us." The testimony was held admissible, citing Holden v. State, supra. Knight v. State, 64 Texas Crim. Rep., 572, 114 S. W., 967, cites many authorities. See Taylor v. State, 89 Texas Crim. Rep., 118, 229 S. W., 552; Bennett v. State, 91 Texas Crim. Rep., 424, 239 S. W., 951. Mr. Reynolds' testimony puts appellant and his father both in the truck of witness when the statements were made, which would make such contiguity, etc., as would support the proposition that appellant heard what was said by his father. That the statements were of a character to call for a response or denial from appellant seems evident. Reynolds, seeing the men running, asked why. The testimony of this witness above quoted would support the inference that appellant was the one who replied that he would tell if witness would let them got in the truck. The pronouns used would so indicate, but we think this immaterial in passing on the admissibility of the statements. Both men got in the truck of Reynolds. Asked at this point

what Pole Halbert said, witness replied that he, Pole, said he thought appellant had killed Roy Russell. Asking further, in substance, what caused appellant to do the act, Pole replied "Not a G—d damn thing." Appellant's neck was cut. The situation called for an inquiry by Reynolds. Seeing one man cut, and being told in appellant's immediate presence by his father that he thought his son had killed Roy Russell, the plain import of the next query of Reynolds was, what caused this man's cut neck and the other man's probable death? The answer of Pole Halbert,—known to the jury from testimony aud to us from the record to have been present during the entire altercation,—was, in substance and effect, that there was no cause, no reason. As res gestae, the facts spoke through Pole Halbert. Being in appellant's presence, if untrue, such declaration called for appellant's denial. Being res gestae and in appellan't presence and undenied, the testimony was admissible.

We see no error in letting Ran Russell testify that he had no agreement with Pole Halbert to allow the mules referred to to remain on the farm bought by him from Halbert. Appellant testified that there was such agreement, and that he was present when it was made. Such agreement was the essence of the difference and quarrel between Russell and Halbert, the part of appellant's father in said quarrel manifestly being taken by appellant in what he said to deceased just before the cutting, and in the cutting itself, as viewed from the state's standpoint.

If the testimony of Dalton Smith, above referred to, was admissible as we have held, then the argument of state's counsel, set out in bill of exception 9, to the effect that appellant did with that knife what Dalton Smith said he said he would do, was not out of the record, nor a discussion of a matter not properly before the jury. Counsel for the state did not say that this was the knife appellant had, when talking in Smith's presence. Nor was the fact that appellant did not name Roy Russell, in what he said in Smith's hearing on the Sunday before, sufficient to make either the evidence or argument improper. If appellant's attitude toward the mule difference was such as that he was going to stop that fuss with a knife, and if in consequence of such attitude he used a knife on any party connected with, or as a result of a discussion of said fuss, then the evidence was admissible and the argument not improper.

Appellant made a motion for new trial, at the hearing of which some testimony was heard. Neither Smith nor Alford appeared in person or by affidavit. The hearing had reference to the refusal of the continuance. We think the motion was properly overruled.

We have appreciated the exhaustive and able brief filed by learned counsel for appellant, and same has been carefully examined by us.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

HAWKINS, JUDGE.—Appellant predicates his motion for rehearing on the proposition that we were wrong in the conclusion reached regarding his second application for continuance.

The showing of diligence as to the absent witness Smith appears in the application as follows: "On the first day of the March Term 1931 of this Court, to-wit: On March 2nd, 1931, defendant by his counsel made application for the issuance of a subpoena for said witness to compel his attendance as a witness for defendant in this cause, giving the place of residence, the exact location and vocation of said witness; that on the 3rd day of March, A. D. 1931, the clerk of this court issued a subpoena for said witness and sent the same by mail to Bee County, Texas, for service on said witness; and that said process has not yet been returned to this court; that on the first day of this term of this court defendant, by his counsel, asked the court for an order for an attachment to be issued to Bee County, Texas, for said witness to compel his attendance as a witness in behalf of this defendant at this term of this court; that thereupon the clerk of this court issued an attachment for said witness addressed to the sheriff of Bee County, Texas, which defendant is informed and believes is the present residence of said witness. That said process has not been returned to this court."

The term of court at which the case was tried began August 24, 1931. The process for Smith which was issued the first of March had not been returned. Practically six months had elapsed before the second process for this witness was requested. If any effort had been made to make sure of the location of the witness or to take steps towards securing his attendance at the August term of court until this second process was applied for, the application for continuance fails to show it. It appears only that appellant "is informed and believes" that Bee county was the then residence of the witness. The process in March went to Bee county and met with no respense; yet the court was not informed in the application for continuance of any fact or information leading appellant to believe the witness was still in that county. Under the circumstances we are bound to hold that a lack of diligence to secure the presence of this witness appears upon the face of the application itself.

As to the absent witness Alford, it is shown that he was served with process at the preceding March term, 1931, and attended court at that time as a witness. In the second application for continuance it is averred that appellant was informed and believed that said Alford was temporarily in the state of Delaware. In our original opinion we stated that the application for continuance to have been sufficient as to Alford, should have shown "when he left Texas, when appellant became aware of this, and facts should be averred showing that proper diligence could not have secured the deposition of such witness in time for this trial."

In his motion for rehearing appellant calls attention to the provisions of article 749, of the C. C. P., which requires that, before depositions taken in a criminal case may be read in evidence, oath must be made that the witness whose deposition is offered resides out of the state. Appellant's position is that under the facts alleged in the application for continuance he could not make this affidavit because he had no information that the witness *"resided" out of the state,* but that he was only away temporarily, and that if, under these circumstances, the depositions of Alford had been taken they could not have been properly admitted in evidence. In support of his contention appellant cites Evans v. State, 12 Texas App., 370; Sullivan v. State, 6 Texas App., 319, 32 Am.. Rep., 580; Cooper v. State, 7 Texas App., 194; Freeman v. State, 115 Texas Crim. Rep., 66, 30 S. W. (2d) 330; Serna v. State, 110 Texas Crim. Rep., 220, 7 S. W. (2d) 543. It may be the statement in our original opinion was too broad. We do not discuss the matter further than to say there is some question in the mind of the court as to whether it would be necessary for an application for continuance for a witness who was temporarily out of the state to go as far as was indicated originally. The matter of Alford's absence may be disposed of, we think, upon an entirely different ground.

It is stated in the application that the evidence expected from Alford was that he was "an eye witness to the transaction alleged in the indictment herein and that the deceased, Roy Russell, at the time of the occurrence alleged in the indictment, and before defendant made an assault upon dceased, was making an assault upon this defendant."

One of the grounds urged by the state against the sufficiency of the application for continuance was not discussed in our original opinion. It was based upon the proposition that an application for continuance must set out the facts which are expected to be proven by an absent witness, and it must appear to the court that they were material; that such application was defective if it failed to specifically set out the facts which said absent witness would testify to, but merely stated conclusions, and that general averments were not sufficient. It is unquestionably true that the averment as to what appellant expected from the witness Alford is of a most general nature. If the witness had been present and had attempted to testify that the deceased had made an assault upon appellant before appellant assaulted deceased, such proposed evidence doubtless would have been met by an objection and a request that the witness be required to state what the respective parties did in order that the jury might appraise the value of his testimony. The trial court and this court are left in the dark from the application as to what particular act deceased did which the absent witness might have characterized as as assault. We find from the statement of facts that one Calvin Davidson testified that he saw deceased kick at appellant and that he appeared to

be angry at the time, and that he (witness) took his eyes off them for just a second, and when he looked again deceased was lying on the sidewalk. Whether the act of kicking by deceased (if it occurred) would have been regarded by the absent witness Alford as an assault we are in no wise able to say. If such act was intended to be covered by the averment in the application for continuance, then the testimony of the absent witness would be cumulative. We call attention to these matters because the record fails to show the sufficiency of the application for a continuance for the reason that it does nothing more than state a conclusion of the absent witness. It must furthermore be borne in mind that it is not in every case, even where the absent witness's testimony is material, that the appellate court will reverse because of the denial of a continuance. It is only where from the evidence adduced on the trial the appellate court is impressed with the conviction that it is reasonably probable if the absent testimony had been before the jury a verdict more favorable to appellant would have resulted. Branch's Ann. Tex. P. C., sec. 319, and authorities cited thereunder. In passing upon the motion for new trial predicated upon the refusal of continuance the trial court necessarily had before him all of the evidence found in the record before this court, and under the rule last stated we can not reach the conclusion that the trial court erred in overruling the motion for new trial.

In his motion for rehearing appellant calls attention to the judgment of conviction which directs that appellant should be punished by confinement in the state penitentiary for a term of twenty years, it evidently being appellant's idea that the judgment should have been for not less than two nor more than twenty years, under the indeterminate sentence law. The judgment was properly entered following the verdict of the jury. Article 775, C. C. P., provides that in passing sentence the trial judge "instead of pronouncing a definite time of imprisonment in the penitentiary * * * shall pronounce * * * an indeterminate sentence of imprisoment in the penitentiary, fixing in such sentence the minimum and maximum terms thereof, fixing in such sentence as the minimum time of imprisonment * * * the time * * * prescribed by law as the minimum * * * and as the maximum time of such imprisonment the term fixed by the jury in their verdict." We observe that in passing sentence upon appellant the court properly complied with the provisions of article 775 (supra).

The motion for rehearing is overruled.

*Overruled.*